# Exhibit 1

# In the Matter of:

## Sublime Systems v. USA

*August 12, 2026*
*UNDER SEAL*

**Condensed Transcript with Word Index**

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SUBLIME SYSTEMS, INC., )
Plaintiff, ) Case No.
vs. ) 26-458C
THE UNITED STATES OF AMERICA, )
Defendant. )

*** TRANSCRIPT UNDER SEAL ***

Courtroom 4
Howard T. Markey National Courts Building
717 Madison Place, N.W.
Washington, D.C.
Wednesday, August 12, 2026
2:00 p.m.
Oral Argument

BEFORE: THE HONORABLE ELAINE D. KAPLAN, JUDGE

Reported by: Sara J. Vance, CERT



APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

DANIEL F. JACOBSON, ESQ.
JOHN ROBINSON, ESQ.
BRIAN ROSEN-SHAUD, ESQ.
Jacobson Lawyers Group PLLC
5100 Wisconsin Ave. NW
Suite 301
Washington, DC 20016
(301) 823-1148
dan@jacobsonlawyersgroup.com

ON BEHALF OF THE DEFENDANT:

MATTHEW LEWIS, ESQ.
CORINNE A. NIOSI, ESQ.
U.S. Department of Justice - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 880-6321
matthew.lewis@usdoj.gov



I N D E X


| ARGUMENT: | PAGE: |
| --- | --- |
| By Mr. Lewis | 4, 63 |
| By Mr. Jacobson | 41 |
| RULING: | 78 |




P R O C E E D I N G S

\- - - - -

(Proceedings called to order at 2:00 p.m.)

THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Elaine D. Kaplan presiding.

THE COURT: Be seated, everybody.

THE CLERK: This is Case Number 26-458, Sublime Systems, Inc. vs. the United States. Appearing on behalf of the Plaintiff is Dan Jacobson; on behalf of the Government, Matthew Lewis. This is a hearing on the Government's motions to dismiss.

THE COURT: Okay. I'll hear from the Government. It's your motion.

MR. LEWIS: Good afternoon, Your Honor, and may it please the Court. Matthew Lewis, on behalf of the United States. And I'd also note that although I've been at the office for a few years, I do believe it's my first time appearing in front of you, so nice to meet you in person.

THE COURT: Oh, thank you.

MR. LEWIS: Regardless of any pro se filings we may have had before this point.

THE COURT: Okay.

MR. LEWIS: The Court should dismiss Sublime's

complaint where Sublime does not plausibly allege a breach of the contract because pursuant to the federal regulations incorporated into the cooperative agreements, the United States had a contractual right to terminate and, therefore, did not breach the agreement by effectuating that contractual right.

Similarly, Sublime's claims --

THE COURT: Do we have any idea why the contract was terminated?

MR. LEWIS: Yes, Your Honor.

THE COURT: Besides just the recitation of the, you know, termination clause, is there --

MR. LEWIS: Some of the allegations are set forth in the complaint, and for the purposes of our motion to dismiss, we don't challenge those allegations. Secretary Wright announced that he was initiating a review of the grants underneath this program, or grants and cooperative agreements underneath this program. There was a review. It occurred over roughly two weeks, by my understanding. And at the end of that review period, the programs that DOE deemed were not consistent with its agency priorities were then subsequently terminated.

THE COURT: Where did these priorities or these program goals, where would you find them? I mean,



if you wanted to test to see if it was consistent, if the award was consistent or continued to be consistent or whatever?

MR. LEWIS: I don't know that the program, these specific program goals, are written down in any particular place. I think it is the agency's discretion in determining the best manner in which it might effectuate DOE's energy-specific ideas and the administration's priorities and how to effectuate those ideas through the expenditure of taxpayer money to fund projects like this, where we're essentially providing a corporation some money to get a business up off the ground for a particular purpose.

THE COURT: Okay.

MR. LEWIS: Similar to the breach of contract claims, Sublime's claims that any implied duties were violated or that bad faith was implicated in the termination are not supported by allegations in the complaints, and any analysis into these theories merely goes back into the termination language contained within the contract, and that same language permits DOE to terminate these awards underneath those provisions.

Should the Court determine that this case should not be dismissed in its entirety as we argue, we also move to preclude Sublime's sought expectation



damages under the basis that Sublime essentially had an option year contract in the form of budget periods as defined under the contract.

THE COURT: Right. So they say it's not like an option, though, because there are criteria that you use to decide whether to go into the next budget year. It's an option that's purely discretionary, right?

MR. LEWIS: They do make that argument, and we can go down -- I'm happy to -- actually, we have quite a few arguments here, Your Honor. I'm happy to jump into that argument first, if that's convenient. That is also the argument we address first, but if you'd like to go --

THE COURT: I'm not sure you should really address it because I think what you're asking me to do is to strike the damages theories. Is that right? What is the basis for doing that?

MR. LEWIS: Yes, it would be destructive damages theories, or I guess the underlying argument we're making is that the contract itself precludes any of Sublime's expectation to the future budget periods.

THE COURT: Right.

MR. LEWIS: And once the Court reviews the language of the contract and determines that, in fact, the contract does say that, then Sublime could not conceivably get any damages associated with these budget



periods because those would be the expectations. So it is a damages-based argument.

THE COURT: Right, but they still are entitled to some damages, right --

MR. LEWIS: Yes.

THE COURT: -- even if you're right? So you did a motion to strike, which doesn't seem like it fits here.

MR. LEWIS: A motion to dismiss and, in the alternative, motion to strike, yes.

THE COURT: And then the motion to dismiss it would be to dismiss a claim, not a damages theory.

MR. LEWIS: Yes.

THE COURT: Right?

MR. LEWIS: Yeah. And we -- well, we would disagree because there is instances where the Court has upheld or courts around the country have upheld dismissing or striking specific damages. We actually had a hard time generally finding situations not that necessarily ruled in our favor, but that dealt with situations like this where we have a purely legal issue of contract interpretation: How should the Court review a purely legal issue at this early pleading stage?

THE COURT: One question is why should I review it, because if I don't find a breach, then nobody has to

9

ever address the issue, right?
MR. LEWIS: Well, I think that if you were to find that there is no breach, then I would say you would have no need --
THE COURT: Not necessarily today, maybe in the future, if we were to conclude there was no breach, then there's no reason to reach that issue, I guess.
MR. LEWIS: Well, I'd say I think a compelling point here is, Your Honor, that, I mean, we concede that when a contract is terminated, the Government pays, right? It is consistent regulations underneath the federal contracting regulations, it's consistent underneath the uniform guidance. There are differences between them, most notably that the FAR sets forth much more particular reimbursement requirements.
We are not trying to be unreasonable and come in here and say Sublime is not entitled to any money by virtue of its termination, but we do have issue with the particular type of money that is sought as a practical matter of administering this case going forward, especially where Sublime has, in its motion to expedite, sought a condensed schedule to address what has been declared a dire financial situation.
Should we enter into discovery with the full realm of damages available to Sublime, even if, under the

10

terms of the agreement, they clearly cannot obtain those damages, we would be, I think both parties, inundated in discovery fights, protective orders. I mean, they seek things like the loss of company valuation. If we were going to argue about that, we would have to probably obtain an expert in order to do expert discovery into company evaluation. So it's the practical step towards getting the issues in this case to what can cognizably be resolved by the Court, and so I think that is the underlying basis by which we chose to try to address damages at this early stage.
THE COURT: I think you suggested in your brief that actually it could be decided in summary judgment, right?
MR. LEWIS: Yes.
THE COURT: But you don't mean right now because there's been no discovery at all.
MR. LEWIS: Well, I think that this could be construed as a motion for summary judgment. And, in fact, parties regularly move for an early summary judgment, even before discovery. I think that this would also be ripe for summary judgment itself because there isn't any range of facts here that would change the meaning of this contract. This is purely the terms of the agreement that we've signed.

11

Sublime agreed to an arrangement where the Government disavowed any obligation to future budget periods. If the Court were to rule on this, there may be some dispute that would require facts into, well, which damages are the damages associated with that initial budget period, but that would still substantially limit the scope of discovery or dispute the parties would have in order to get this case to its ultimate resolution, which we hope is the payment of the reasonable expenses incurred in the termination of the award and other allowable allocable costs.
THE COURT: They're hoping for something else.
MR. LEWIS: They are. Quite a bit more else.
THE COURT: Okay.
MR. LEWIS: And we have jumped around here a fair bit in my expectation damages arguments, so I imagine I will clumsily kind of go through the points that I still have remaining here, Your Honor.
THE COURT: Okay.
MR. LEWIS: I do think that an important comparison point when we look at the expectation damage, because you noted that they addressed that there is some objective measure within the performance that makes this preclusion within the contract inappropriate for resolution, but I would first contest that there is

12

nothing in the contract that actually creates some obligation that the Government cannot terminate or cannot choose not to effectuate or award a future budget period of the award. There is objective criteria because, and I don't even know if I would agree with that terminology, there is information that Sublime would have to meet in order to continue receiving money from the Government to participate in this award.
THE COURT: This is the go/no-go review?
MR. LEWIS: This is the go/no-go review. In that go/no-go review process, the United States, because it is, in fact, giving taxpayer money to Sublime and a substantial amount of it for the completion of a personal project of Sublime, if you will, in order for Sublime to get future monies, it does have to meet thresholds. And, so, this go/no-go review involves a process that would inform DOE's decision on whether or not it would award future budget periods, but nothing in that so-called objective evaluation criteria actually impacts DOE's position that it cannot choose not to award the future budget periods.
And I would perhaps by comparison, Your Honor, and we cite to this in our opening brief, even in the traditional termination, or excuse me, option year structure of federal contracting, and that's the -- I

believe it's FAR 17.206-208 -- actually, do I -- FAR 17.207, Exercise of options, even in the normal circumstance where the Government's considering the exercise of options and the award of an option year FAR-based contract, the Government still, before awarding future option years, goes through a number of criteria to make sure that it can, in fact, provide this additional funding to the contractor, even in the circumstance where the Government is, in fact, receiving something back from the contractor.

And in the traditional FAR-based contracting, the evaluation of options language, which is FAR 52.217-5, the language in that option is, "Evaluation of options will not obligate the Government to exercise the option(s_." So we're looking at a similar structure where the Government has to go through processes to determine if, in fact, it wants to continue awards and similar language where the evaluation of options is not guaranteed by the work.

THE COURT: So in the standard terms and conditions of the cooperative agreement that I think is in your appendix --

MR. LEWIS: Yes.

THE COURT: -- so I'm looking at Appendix 9, and I'm wondering why you're not citing this sentence



that says, "As a result of this review, DOE in its sole discretion, may choose to." I mean, what is that? Doesn't that help your argument?

MR. LEWIS: It would, Your Honor, except that that language was amended.

THE COURT: Oh.

MR. LEWIS: Yes, and, so, I believe that was perhaps our first footnote. One of our footnotes in our brief discusses this. I do want to address the sole --

THE COURT: You mean it was amended in the standard in --

MR. LEWIS: In the award-specific terms and conditions. And, actually, I've got a few copies of those terms and conditions.

THE COURT: I have that.

MR. LEWIS: I have two copies right next to each other. If you'd like a little easier comparison point.

THE COURT: The award? No, I've got it, too.

MR. LEWIS: Okay, perfect.

THE COURT: Way ahead of you.

MR. LEWIS: And, so, if you were to compare, and I believe we're looking at Appendix 9 in comparison to Appendix, yes, 47, and Sublime, I think somewhat alludes to the sole discretion language in their



response, I don't know that they substantively engage with this language. And I think that's because on sort of a superficial read of the removal of the sole discretion language, we can see that it's not actually relevant to the nonaward future budget periods.

In the paragraph following the number eight, and I don't want to get ahead of my skis, Your Honor.

THE COURT: No, go ahead.

MR. LEWIS: We see this language, "As a result of this review, DOE in its sole discretion may choose to fund the award, fund the award with certain requirements, or not fund the award." And this is at Appendix 9.

THE COURT: Right.

MR. LEWIS: And if you read to the next paragraphs, it talks about DOE would revise the funding levels, budget periods, milestones, et cetera, like we were talking about. The closing sentence of this paragraph is the language I was referring to that's even stronger than the FAR termination for convenience or the option year language: "Each decision whether to authorize or fund activities in the next budget period is separate and distinct, and the recipient has no entitlement to any authorization or funding of activities beyond the current budget period."

If we look at the Appendix 47, what we see is



that this sole discretion language was, in fact, removed, but it was not removed in a way that changes DOE's unilateral right to determine whether to award future budget periods, because if you look past the enumerated points, the 1 through 3, the next sentence, which is newly added to this paragraph is that "DOE will negotiate in good faith with the recipient regarding any award modifications necessary for the next budget period and will update the award accordingly."

So we see that the substantive change to this language does not have to do with the decision not to fund the agreement, but, in fact, DOE, pursuant to this change in the negotiation to any changes to the award, DOE no longer had sole discretion to amend the award, which makes sense in an agreement like this where Sublime had a very specific work process for an emerging technology. If DOE were to unilaterally modify the award, it might actually impact Sublime's ability to carry out the award.

What this amendment, this removal of the sole discretion, does not do is it does not remove that same language: Each decision whether to authorize and fund activities in the next budget period is separate and distinct, et cetera; recipient has no entitlement to any future funding.



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

17

THE COURT: Okay.

MR. LEWIS: So I did want to address that specifically because I have to imagine your Clerk might notice that, but I think once you actually dig in a little bit --

THE COURT: No one reads the footnotes.

MR. LEWIS: Right.

THE COURT: I'm joking. I didn't read that footnote.

MR. LEWIS: And then I did want to just emphasize that within the context of these expectation damages and for the future budget periods of the awards, we're in an area of law that's underneath that FAR-based contracting. It's pretty set in stone that a contractor, even in the specific circumstances of termination for convenience, is not entitled to any costs addressing the future budget periods, any entitlement to future budget periods.

We cited two recent Federal Claims cases. There's also Hi-Shear, the Federal Circuit case of 356 F.3d 1372, all standing for the same proposition, which I believe is consistent going back quite a ways.

Unless Your Honor has any additional questions about the damages...

THE COURT: No.

18

MR. LEWIS: We can move on to the breach of contract claim that Sublime has brought. Our perspective, Your Honor, is that the Court should dismiss Sublime's breach of contract because under the terms of the agreement and 2 CFR 200.340(a)(4), DOE had the contractual right to terminate due to -- due to program policies or agency priorities, and that is what DOE did. There was a change in DOE priorities and, as a result, the award was terminated.

THE COURT: What was the change?

MR. LEWIS: It was a change in DOE's perspective on essentially green policies. So DOE reviewed some of its policies. These were specific to the -- this award was a part of the Office of Clean Energy Development, and so that is a green policy. DOE, based upon administrative priority changes, reviewed those specific programs.

THE COURT: So it ended the assistance for all green energy policies?

MR. LEWIS: Not pursuant to the termination of this particular --

THE COURT: Right, but it terminated a bunch of other contracts, too.

MR. LEWIS: As I understand. I don't know the scope or the specifics. That's far beyond my personal

19

knowledge.

Sublime throws out a number of arguments. I mean, if you were looking at the complaint, I believe there's seven or eight specific arguments attempting to circumvent this controlling language. But at bottom, any analysis of Sublime's agreements under the contract and the DOE's bargain for agreement under the contract starts and ends with this 200.340(a)(4) termination right. And I'll just read that: "By the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities."

This is copied directly into the language -- into the agreements with a very mild change to the language where it's the term "greatest extent authorized by law" is added in. Otherwise, I do not know that the specific language in the DOE agreements meaningfully changes the understanding.

I'd additionally note that, I mean, termination for convenience is a particularly important clause in government contracts. It is, in fact, the clause that created the Christian doctrine. It's so important that we have a whole doctrine flowing from it that important clauses must be read in. And, in fact, this -- this is

20

similar, where if you look at 200.340(b), the federal agency or passthrough entity must clearly and unambiguously specify all termination provisions in the terms and conditions of the federal award.

So we're looking at similar broad termination standards under 2 CFR 200, which are often referred to as the uniform guidance.

THE COURT: So, all right, well, let me just move on to count one, the breach of contract. So Sublime says that DOE breached the contract because they relied on, first, this factually false proposition, right, and, second, because one of the grounds they gave is it's a confused version of the actual grounds. It's not the actual grounds for termination. So would those be breaches of contract?

MR. LEWIS: No, Your Honor. Well -- and to address those in part, I'll say that the termination letter has three grounds laid out. Two of them are essentially references back to the same 200.340 provision. So I would argue that's really two grounds, where one was DOE reviewed the electricity consumption of this award because this project involved a tradeoff between electricity consumption and the ultimate manufacturing of more environmentally friendly cement, specifically in air quality.

THE COURT: Mm-hmm.
MR. LEWIS: And DOE did not consider that to be within its priorities going forward. And, then, DOE referenced the 340(a)(4) termination grounds at two different points.
THE COURT: Say that again. I'm sorry, I didn't --
MR. LEWIS: Absolutely.
THE COURT: -- I didn't follow. I don't have a copy of the term- -- whatever the termination letter is.
MR. LEWIS: And, I'm sorry, I did not bring one before me either.
THE COURT: No, it's okay. It's not --
MR. LEWIS: I don't know that it meaningfully changes our argument. Regardless of whether or not, you know, there was some nuanced dispute about or even, you know, general dispute about whether or not Sublime's agreements effectuated DOE's electricity policy goals or if DOE accurately or substantially addressed the specifics of the electrical consumption in the termination for convenience notice, any of that would be harmless error, because, no matter what, DOE still had the right, pursuant to its agency priorities, to terminate the award under 200.340(a)(4).
And, so, where Sublime throws out, I want to



say --
THE COURT: Oh, you say so it doesn't matter if there's a few grounds for termination --
MR. LEWIS: It does not matter.
THE COURT: -- that are illegitimate because there's this one that you say is --
MR. LEWIS: Exactly.
THE COURT: -- that it is not a breach.
MR. LEWIS: Yeah. And that's why we honed in on just this one in our motion to dismiss, Your Honor. It's not that we're necessarily conceding or the extent to which we're disputing the other grounds. It's just that regardless, under this termination right under the contract, which the United States specifically bargained for, the United States can terminate this award for a change in agency priorities.
THE COURT: So it's not a breach of the contract to identify one of -- a ground for termination that isn't really a ground for termination.
MR. LEWIS: Well, I think that Sublime states that the 200.340 ground for termination is not actually a ground for termination. I don't know that that's true, if you actually look at the regulation. I think that -- I mean, it's just flatly contradicting regulation, I would say.



And, again, I think in our -- in our brief, a couple points, we also emphasized the FAR reference points for this type of termination. We pointed out that even if you look at the termination for convenience language in the FAR, we're talking about terminology in the form of government interests. Here, we're talking about termination in the form of agency priorities. The language is about as close as it could possibly be to essentially effectuate the same grounds. And if you were to look at the Federal Register where OMB added these new termination grounds as a uniform termination requirement, OMB expressly rejected requests by commenters to restrict those termination grounds or to go back to only "for cause" termination under the terms of the regulation.
THE COURT: Well, what about Sublime's contention that, in fact, the award does continue to effectuate program -- the program goals or agency priorities, whatever that means?
MR. LEWIS: I don't think that gets us anywhere because it's simply not Sublime's call, right? If the DOE determines --
THE COURT: You mean it can't be reviewed at all. It can't -- it's absolute discretion to decide whether or not it meets the --
MR. LEWIS: I don't know if we need to go so



far as to say something like absolute discretion, what that might mean within this context, but what I would say is that --
THE COURT: So they can't say that there's been a breach of contract if they gather facts that show that the award is actually very consistent with -- or I guess it's a matter of opinion, but is it consistent with the new goals or new priorities?
MR. LEWIS: I think that parenthetical there really hones in on the problem as a matter of opinion because it's not Sublime's opinion or ultimately this Court's opinion that matters. And I believe in our opening brief here, but I don't have the citation readily available to me, I might try to look for it when I go back, a termination effected in, you know, good faith by a government official cannot be overturned merely because somebody else, whether the Court or opposing party, disagrees with it. It is the Government's discretion, the administration's discretion, whether or not to terminate a specific award.
THE COURT: But it has to be done for a specific reason in this context. It's not just convenience. It's no longer consistent with. You know, there are words, there is a standard there.
MR. LEWIS: I would argue that agency

priorities is about as consistent with the Government interest language and termination for convenience as it could possibly be without using the exact same terminology. But, I mean, looking at the context of federal grants, generally, they are -- and cooperative agreements, federal awards, generally, they're structured a little bit differently because they are not necessarily the Government, through uniform regulations, buying all products, services for itself. They're often specific appropriations or purposes of agencies that are laid out a little bit in more complicated fashion.

I don't think that any of the allegations in this complaint actually dive into or substantiate any allegation that DOE could not change its green energy policy, because, of course, DOE could change its green energy policy. And if DOE chooses to change its green energy policy, then it can, in fact, terminate this award, which was -- the topic of which was green energy.

THE COURT: Okay.

MR. LEWIS: There is quite a lot of the breach of contract context. So I believe that's the main opening points that I've got written down. I'm happy to address any more questions now or in reply, but otherwise --

THE COURT: About the breach of contract? No,



go ahead.

MR. LEWIS: About the breach of contract specifically.

THE COURT: Let's move on to the other counts, which are really about abuse of discretion and arbitrary -- the arbitrary nature of the process that was used to terminate the awards.

MR. LEWIS: Yeah, I would -- so diving into the abuse of discretion claim, it should be dismissed for Sublime does not plausibly allege that DOE breached any contractual termination obligation or specific review or analysis provisions required by the agreement, which, of course, the agreement is the basis of the Court's consideration of this action.

I want to point the Court to specifically, rather than talking about, you know, abuse of discretion in the abstract or what might be abuse of discretion, to the allegations that Sublime brings in its complaint. Sublime has essentially three paragraphs, 96 through 98, talking about the abuse of discretion. Sublime, first, at Paragraph 96, argues that this was breached as an abuse of discretion because DOE did not properly provide any individualized consideration of the award, though, at other points of the complaint, Sublime argues that DOE's, in fact, individualized consideration of the electrical



consumption is inaccurate. So they're arguing a bit both ways here, but they argue that the termination wasn't individual enough for their liking.

In 97, they argue that DOE did not provide a specific rationale or reasoned explanation in the termination letter. And in Paragraph 98, they argue that DOE did not provide Sublime the desired opportunity to present a defense before their award was terminated. The problem with all of these requirements is that these are not actual contractual requirements.

And in response to our motion to dismiss, Sublime, to our surprise, relatively straightforward, said that, in fact, it's trying to incorporate APA standards into the termination for -- agency priorities decision-making process, but there is no APA standard read into the contract. There's no reference point to the APA within the contract.

Sublime additionally points the Court to the DOE's Offices of Hearing and Appeals regulations that vaguely address Sublime's opportunity to appeal a termination decision, but those regulations also were not incorporated.

THE COURT: You're talking about the "authorized by law" language.

MR. LEWIS: I think so, Your Honor. It's not



entirely clear to me.

THE COURT: I guess you're right that some of these requirements that they would like to impose are also similar to what's in the Administrative Procedure Act, but they're saying it's also that these criteria can also be used as a measure of whether DOE exercised its discretion to terminate in a fair way, in a reasonable way that was not arbitrary and capricious. That's the standard, right, for abuse of authority?

MR. LEWIS: Well, it's -- or of the abuse of discretion.

THE COURT: Discretion, excuse me.

THE COURT: It's not entirely clear what the abuse of discretion -- DOE, or excuse me, Sublime, argues this is a separate count from breach of contract, but if you look at the termination -- or the abuse of discretion count, they also argue that this is a breach of the contract via abuse of discretion. The Federal Circuit --

THE COURT: But what about just as an abuse of discretion? Forget about whether it's a --

MR. LEWIS: I'm not aware, and I was actually running down the sort of abuse of discretion legal history within the Federal Circuit last night, because it's not a model of clarity that the Federal Circuit has provided to us. And I actually have -- I've got some

real background here for Your Honor. Starting in, like, the ‘70s in Keco Industries vs. United States, that’s a Federal Circuit case -- or, at the time, Court of Claims case -- at 492 F.2d 1200. The Federal Circuit started to incorporate the abuse of discretion standards into bid protests because bid protest more cleanly embraces abuse of discretion because underneath the separate prong of the Tucker Act, bid protests incorporate APA standards.

In Kalvar Corp. v. United States, that’s 543 F.2d 1298, the Court of Claims then read in, in a sort of single line, that abuse of discretion or bad faith are potentially grounds to overthrow a contracting right. And they do so citing a single line in a Nolan Brothers case from 1969. That’s at 405 F.2d 1250. There’s no real analysis as to what that abuse of discretion would be as a separate count for relief from the claims -- from a bad faith claim, which is what we think is the actual analysis that Sublime would need to do to overthrow a properly performed termination for convenience or termination for agency priorities.

Since that point, the Federal Circuit has copied that bad faith or abuse of discretion language into a number of decisions over time. To the top of my head, when I was going through, I didn’t see any that really laid out abuse of discretion as a separate claim.



In its response brief, I believe that Sublime identifies that we don’t talk about the specific standards for an abuse of discretion claim. I’m not sure what those specific standards would be. So the case law is not entirely clear.

I think instead of diving into sort of a murky area of what is abuse of discretion, can the Court differentiate that from a pure bad faith claim, which we’ll get to subsequently, it is, well, underneath the terms specifically incorporated into the contract, which is the basis for this agreement, did DOE actually have specific obligations to provide some heightened individualized analysis, provide an appeal process, or provide Sublime an opportunity to be heard?

I think once we take it from this broad sort of amorphous abuse of discretion concept and actually hone in on what Sublime pled in its complaints, we can see that they don’t actually identify any contractual obligations that DOE entered into.

We’ve gone on for a minute there.

THE COURT: Go ahead.

MR. LEWIS: Let me move my papers around substantially. And, then, I mean, I can move on here as well, Your Honor. I would additionally note that I’m not aware of any case that has incorporated the APA into the,



like, federal contracting generally, as Sublime asked this Court to do. I took a look around a little bit. I could not find anything. I don’t recall Sublime providing any reference point for that specific incorporation into the brief.

THE COURT: I don’t think they’re saying that they want to incorporate the APA. I think they’re just using standards that are also used in the APA to determine whether the agency exercised its discretion in an arbitrary and capricious way.

MR. LEWIS: I think regardless of whether they’re trying to incorporate it directly or trying to include the standards, I’m not aware of any, you know, Tucker Act (a) -- 1491(a), i.e., the not -- the non-bid-protest jurisdiction, but the general Tucker Act contract jurisdiction, where the Court has incorporated APA standards into a dispute in this manner.

THE COURT: Okay.

MR. LEWIS: So I think the Court would really be stepping out here in a way that’s not entirely clear from the case law that it has any right to do. And, finally, I note that to the extent that Sublime does make a number of arguments about incorporating these APA requirements, whether explicitly or implied by the arguments they’re making here, to the extent that this



information is going to be read into an agreement, the Federal Circuit in Northrop Grumman, that’s at 535 F.3d 1399, it’s a 2008 decision, laid out -- discussed the fairly explicit standards by which additional terminology or additional standards need to be incorporated into a contract. You know, direct reference points, language addressing specific provisions, nothing of the kind here where we don’t actually have any reference points addressing the APA or really anything like it in the agreement between the parties.

And, then, I can jump onto our breach of the duty of good faith and fair dealing argument here, Your Honor.

THE COURT: Sure.

MR. LEWIS: I think this is perhaps our most straightforward of our arguments. I think it’s fairly simple. It simply cannot survive where Sublime fails to identify a specific promise that was violated or where, at best, Sublime merely repeats the challenges within its breach of contract claim.

And, then, as a starting point, again, I would like to dive into just what we have in the pleadings. The breach of duty of good faith and fair dealing, it’s, you know, two pages long, and once you get past the reiteration of the legal standards, the pleadings



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

themselves are two paragraphs at 90 to 91.

Essentially, Sublime states that DOE destroyed Sublime's reasonable expectations in the cooperative agreement, essentially just reiterating the legal conclusion of a breach of the duty of good faith and fair dealing and that Sublime arbitrarily and capriciously terminated the agreement. In other words, Sublime is simply rechallenging the same termination provision at 200.340(a)(4) that it's challenging in its breach of contract claim.

Through both Dobyns and Precision Pine, which we've discussed in our brief, the Federal Circuit has consistently held that to -- or to maintain a breach of the duty of good faith and fair dealing claim, a party must identify a specific promise that was violated in the agreement.

THE COURT: Now, how does that work? If I identify a specific promise, then aren't I just alleging a regular breach of contract?

MR. LEWIS: I think there's a little bit of nuance here, Your Honor, because --

THE COURT: It's a lot.

MR. LEWIS: -- yeah, Precision Pine --

THE COURT: I get it.

MR. LEWIS: -- also sets forth that, you know,



or -- and I believe it's Precision Pine --

THE COURT: No, I've seen that before.

MR. LEWIS: Yeah.

THE COURT: And I have a very hard time understanding this duty the way it's been defined and when you say it has to be based on a promise in the contract, and then you also say but it can't be like a breach of contract.

MR. LEWIS: Yeah.

THE COURT: It can't be duplicative of that.

MR. LEWIS: And it can't override an express promise of the agreement. I think that's kind of where we get into a problem here. Perhaps by way of example, Your Honor, let's say, so this -- this base period -- budget period of this cooperative agreement was essentially the design and planning stage that Sublime was entering into for the ultimate construction of a cement manufacturing facility.

If, for example, the United States terminated Sublime under the 340(a)(1) prong, which is the termination for cause by the basis of Sublime submitting, you know, drawings and specifications late to the United States, but, in fact, upon review, if it turns out that the United States -- that Sublime was submitting these drawings or specifications late because the United States



was delaying the process by delaying the approval of the designs and specifications, an approval process that's not set forth within the specific contractual regulation or contractual agreement, like there's nothing in the agreement, as far as I know, that sets forth the standards by which the Government would approve or review designs.

Well, then, Sublime, I think, at the very least, at the 12(b)(6) stage, could set forth a breach of the duty of good faith and fair dealing allegation that the Government impeded Sublime's obligations to submit designs or drawings because the Government itself delayed and the Government delayed in a way that's not set forth in the contract, but which undermines Sublime's expectations under the contract for the work that it needed to be done. It would be an obligation that is tethered to the agreement but not explicitly set forth in the agreement.

And I think that's the line that the Federal Circuit fairly clearly, if amorphously, sets out between the case law. It is an implied contractual promise that's not necessarily set forth in the specific language. Here, though, Sublime, despite -- and if we look past that Sublime simply states that it's not required to set forth a specific promise, which, of



course, it is underneath the Federal Circuit standards, Sublime simply states that there's additional facts that would make dismissal inappropriate or that its expectations under the contract breach the implied duty.

But in both circumstances, Sublime merely argues the legal conclusion. It doesn't identify some other implied duty of the contract or implied obligation that was undermined by DOE in the course of performance. Instead, and this runs us right into the recent Portland Mint Federal Circuit case, Sublime essentially, at root, is arguing about the same termination for convenience clause, whether by the breach of duty of good faith and fair dealing, or the abuse of discretion or the breach of contract claims directly. All these claims go back to the same termination provision that is directly in the contract and incorporated into the contract.

Perhaps the easiest way to look at this breach of the duty of good faith and fair dealing argument is that the Court could not find for Sublime on the breach of the duty of good faith and fair dealing without expressly considering this termination provision. The Court would have to review the termination provision, the regulation, and the specifically incorporated language, set aside that language, substantively address that language in the same manner that Sublime asks this Court

to do in its direct breach of contract claim. And in asking the Court to simply consider the express contract regulation, that's where Sublime's argument is merely duplicative with its breach of contract claim and, thus, appropriately dismissed underneath the Portland Mint precedent set in the past two years.

THE COURT: Okay.

MR. LEWIS: And for our last count, Your Honor, we move to dismiss Sublime's argument that this -- that its contract was terminated in bad faith. It should be dismissed simply because Sublime has failed to plausibly allege bad faith in the termination. At root, Sublime's bad faith allegations come to an inference that DOE was acting in bad faith when it terminated Sublime's award. Sublime identifies no facts in its complaint or even its response where it throws in some new facts that specifically address any animus toward Sublime or even towards a group that Sublime is part of.

In our motion, we went through each of Sublime's allegations, which, again, are fairly limited here. Sublime primarily cites to court decisions, and I'm looking at Paragraph 103 of the complaints. We see citations to three different court decisions. Two of these decisions aren't even about the Department of Energy. The only decision addressing the Department of



Energy is the City of St. Paul decision from DDC in January 2026.

But if you peel that back even just a little bit, Your Honor, the terminations at issue in the City of St. Paul case are terminations from October of 2026. This was a termination in May 2026, and these October terminations are subject to considerable litigation around the country but notably involve terminations that were impacted or were meant to impact the federal shutdown, you know, the large federal shutdown that was happening at the time.

The May termination at issue here is simply not related to DOE's actions in November or October 2026 when considering potential termination, and how grant terminations, as alleged in these cases targeting blue states, might impact the status of the shutdown or escalate the end of the shutdown. It's just simply a different factual situation, and the Court can't look at these cases to infer some sort of intent or animus about Sublime relevant to this consideration.

In its response brief, Sublime essentially asked the Court to or seeks to amend the complaint by including a new allegation by Secretary Wright that's not contained within the complaint, at least to my knowledge. It's certainly not referenced within this



section addressing the bad faith counts.

THE COURT: Is that the Green New Scam?

MR. LEWIS: The Green New Scam. And it's true, I mean, I believe two points, and I have it here, in particular, two points of the subcommittee hearing. Secretary Wright does refer to a Green New Scam. Secretary Wright never refers to Sublime. Secretary Wright never refers to the office that Sublime's work was coming from.

THE COURT: Right, but don't you think it's pretty obvious, though, that this is among the projects that he's referring to?

MR. LEWIS: Not necessarily, Your Honor.

THE COURT: No?

MR. LEWIS: And, really, we have no way to know based on the allegations here.

THE COURT: Can't infer that?

MR. LEWIS: But what I would say --

THE COURT: Wouldn't infer that?

MR. LEWIS: I would not, especially where the inference that Sublime asked this Court to make is an inference of bad faith under this count. And, of course, government officials are presumed to act in good faith.

And that kind of leads me to the next point, that even if the Court were to consider that these Green



New Scam allegations were about not even Sublime but the type of work that Sublime is performing, that's simply not bad faith. DOE is entitled to disagree with the type of work that any of its contractors, grantees, partners, in this case of cooperative agreements, are working on. A decision, even a charged political language addressing the type of work being formed, is very different than a specific allegation targeting either Sublime individually or a class that Sublime is a part of or intending to injure Sublime.

In its complaint, in I think its response, Sublime makes a couple of allegations that there was some express intent to harm Sublime, and I think that gets to the issue because though Sublime states that as its ultimate conclusion, there is, in fact, no allegations in the complaint that identify any express intent to harm Sublime. And for that reason, the --

THE COURT: Well, I think they're saying there's an intent to harm the group to which Sublime belongs.

MR. LEWIS: I think at best.

THE COURT: It's companies that have, you know, have this Green New Scam projects.

MR. LEWIS: Well, I think Sublime titles it "an intent to harm this group" or tries to construe it in

that way, but, at best, what we have is an intent to harm that type of work, is an intent not to pursue green new work. There aren't any allegations here about the companies or the individuals performing that work. It's about the work being performed. And I think that's the difference in kind separating something like a bad faith allegation from simply a disagreement about the ultimate termination of the award that can't be challenged underneath 200.340-84.

THE COURT: Thank you.

MR. LEWIS: Thank you, Your Honor.

MR. JACOBSON: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. JACOBSON: May it please the Court. Daniel Jacobson on behalf of Sublime Systems. Your Honor, I'll touch briefly on the issue of damages. As Your Honor, I think, alluded to, that entire issue is just premature. It's not properly before the Court right now. This is a motion to dismiss. And yet through these arguments, the Government is not seeking to dismiss anything. And, so, it's obviously procedurally improper.

And, in fact, we have binding Federal Circuit precedent in the form of including the San Juan decision, which actually was not a motion to dismiss decision. That was an error in our complaint -- in our brief. It



was a summary judgment decision. And even there, the Court said you can't just rule on damages preemptively. You can't put, in the Court's words, the cart before the horse. You have to first rule on whether there's a breach and establish liability and only then damages comes into play.

THE COURT: Okay.

MR. JACOBSON: Certainly, we disagree with much of the arguments about the option years and all of that, but unless Your Honor has questions, I'm happy to just go straight to the breach.

THE COURT: No. Let's go to the --

MR. JACOBSON: Thank you, Your Honor.

THE COURT: -- breach of contract.

MR. JACOBSON: Yes. So in a moment, I'll walk through each of the counts of the complaint and our breach theories and what the Government does or doesn't even contest.

THE COURT: Okay.

MR. JACOBSON: Before I do, just as sort of setting the stage, I want to emphasize, Mr. Lewis repeatedly cited the FAR and case law under the FAR and termination for convenience provisions. This case is not -- this contract is not under the FAR. This contract does not have a termination for convenience provision.



This is a -- you know, of course, this is a contract matter, which means the actual words in the contract are what controls, not some other regulatory system or case law about different regulatory systems.

And, you know, Mr. Government Counsel, I think, said at one point, well, this is as close as you can get to a termination for convenience. Not only are the words different, but one thing I would highlight, Your Honor, is that OMB, which issues these regulations about, you know, when you can terminate based on priorities, Your Honor might have seen in the news they recently had a big proposal, a proposed rule to amend those regulations.

In that proposed rule, they've actually proposed adding an actual termination for convenience provision to this section, which only goes to show --

THE COURT: That it's different.

MR. JACOBSON: -- it's different, exactly, Your Honor. There'd be no reason to do that if it wasn't.

Going straight to count one. Count one of the complaint is for breach of the express terms of the contract. You know, I'll talk more about this later in terms of what's the difference between count one versus count two versus count three. This is that they violated the express words in the contract. The other provisions are about even in exercising whatever authority they had



under the contract, they exercised it in a way that was arbitrary or unreasonable and so on.

So focusing on count one, we plead six or seven, depending on how you count, different theories of how they breached the express terms of the contract. And I think maybe the most important thing to note right off the bat is the Government's opening brief does not even dispute or get -- or address at all three of those theories. And, of course, arguments not raised in opening brief are waived. And, so, no matter what, this case is going forward. Count one is going forward.

THE COURT: What are you saying, that the Government is not disputing --

MR. JACOBSON: Yeah, I'll go through --

THE COURT: -- which of your theories?

MR. JACOBSON: -- three of the theories, Your Honor. First, their opening brief did not address at all our first theory that two of the three grounds listed in the termination letter were simply not contractual grounds for termination. If it's --

THE COURT: Well, they just addressed it now.

MR. JACOBSON: Sure, but in terms of what they moved to dismiss on, they did not even move to dismiss that theory. But to address government counsel's argument --

THE COURT: Okay.

MR. JACOBSON: -- and if it's helpful, Your Honor, would you like me to pull up the actual wording of the termination letter?

THE COURT: Okay.

MR. JACOBSON: Just so -- let's see. So if you look at the one with the star, it quotes the three different grounds. First, that Sublime only considered the emissions reduction at the facility and did not consider the emissions generation of electricity to power the project. As we note, and I don't think the Government disputed, that is just false. Their proposal very explicitly considered that, as they had been required to do.

Second, that the award "fails to meet the goals or priorities of DOE and the administration." That is not a contractually permitted ground for terminating the award. You know, it's close to the third, but it's different in some important ways, including it doesn't have the "to the extent authorized by law" caveat. It doesn't have the "no longer effectuates," which as I'll get to, is important. And it doesn't say program goals; it just says goals.

And, so, then, the third is the one that, you know, relates to this regulation that was incorporated.



So I don't think there can be any real dispute that citing those two noncontractually permissible grounds for termination is a breach. I think what government counsel is arguing is really a question of causation: Did the fact that they breached in this way cause Sublime's damages, because would they have independently, but for, still terminated the award anyway based on the third ground listed there? And that is a -- very much a factual question for which discovery --

THE COURT: So you're saying it's a breach just to articulate those other reasons for the termination, even if the third ground would be legitimate grounds for termination?

MR. JACOBSON: Yes, Your Honor. I would say then it's a question of causation, because, you know what, if the Government had listed 59 grounds for termination that were not under the contract and the 60th was, and we have no reason -- we have no way to know would they have independently terminated on that basis. And, so, that itself is a breach.

The second ground that the Government, from our complaint in count one, that the Government does not move to dismiss on in its opening brief is that whatever "no longer effectuates program goals and agency priorities" means, those goals and priorities cannot be goals and



priorities that are "we don't like Congress' goals and priorities" because if that's what it meant, then the regulation would be unconstitutional. The executive branch can't simply say we don't like what Congress passed.

Again, the Government does not dispute that legal proposition that the provision can't mean that, and I think what we heard today is effectively that's what this was, you know, the Congress. This is not just, you know, whether the administration likes clean energy projects or not. Congress passed a law that the President signed into law, the Inflation Reduction Act, that had a specific provision that said DOE needs to spend a certain amount of money on clean energy industrial demonstration projects. That's what this was.

And, so, if they just don't like that, that is not a contractually permissible grounds for termination because that is not what program goals and agency priorities can be read -- interpreted to mean within the agreement, because, otherwise, the regulation would just be unconstitutional.

Third is a ground that Your Honor asked about, which, again, they don't address in their motion, is that Sublime's award project did actually carry out the current administration's program goals and agency



priorities. We believe we actually will have quite a strong factual case here. It's not part of our complaint, but the administration has continued to award funds for concrete production, which is what Sublime does, they are a concrete company.

THE COURT: I think what your colleague is saying, though, is that the Court can't really review whether a particular award is consistent with priorities and policies and so forth, and, so, I guess you can't adjudicate that breach.

MR. JACOBSON: Right. That's just not what the word -- again, the words of the contract says. It doesn't say they can determinate if, in the administration's view, this is not consistent with program goals and agency priorities; it's if this no longer effectuates.

THE COURT: So maybe it's a question of how much deference you give to them.

MR. JACOBSON: Exactly. And you can imagine a world here, Your Honor, where with discovery, there will be emails or, you know, from the career officers who testify, yeah, we now understand, this was totally consistent with what the administration says they want to do.

THE COURT: You hope to find that email?

MR. JACOBSON: I am reasonably confident that something of that nature --

THE COURT: Okay.

MR. JACOBSON: -- this is not based on insider information, but it is -- yeah, it is just illogical --

THE COURT: Okay.

MR. JACOBSON: -- you know, an administration that wants to focus on concrete production would terminate an award to do concrete production.

THE COURT: Okay.

MR. JACOBSON: So those are the three grounds that are just not even addressed in the Government's opening brief. We submit, Your Honor, that the Court, you know, in the interest of obviously time, that is of the essence of my client, the Court could simply deny the motion to dismiss count one on that basis. If the Court does get into the other grounds, though, I'm happy to just talk through them very quickly here, or maybe not so quickly.

THE COURT: You mean the other counts or the --

MR. JACOBSON: No, within count one.

THE COURT: -- other grounds for breach?

MR. JACOBSON: The other counts for breach.

THE COURT: Oh, why don't you go through a few more, then.



MR. JACOBSON: Yeah. So the next one that they do dispute in their motion is, you know, what does it -- term -- the award can only be terminated on these goals and priorities grounds only "to the extent authorized by law." And, so, our submission is that the only way to read those words is that if the termination violates the law in some way, you can't just say this is our goals and priorities and, therefore, we can do it.

THE COURT: And what laws are violated?

MR. JACOBSON: Yeah. So two, Your Honor. One is the provision of the Inflation Reduction Act itself that says that the Secretary of Energy needs to award a specific amount of money to carry out these projects. I can tell Your Honor, I don't think we plugged this specifically in the complaint, but my understanding is that as part of this mass termination, they terminated each and every award that the Department of Energy had given out to effectuate that specific statute, and they have not awarded any new awards to effectuate that statute, which would be a violation of that statutory provision.

It's somewhat -- this is the most confusing case maybe going on in the country right now, so I don't want to get too far into it, but there's a case that the D.C. Circuit, en banc, just decided called Climate United



about EPA, you know, similar. And what the en banc court held there is the terminations violated the statute of the provision of the Inflation Reduction Act because they resulted in the mandatory appropriations that are just not being spent, and it's similar here.

The second ground, and this is where maybe we've made things more confusing than we needed to, is that to the extent authorized by law incorporates the APA standards, which is different from the arbitrary and capricious as it's used in the abuse of discretion, but I understand why that gets confusing because it's the same words.

THE COURT: So it just -- it seems a little off to me to talk about the APA authorizing something, right, because it's not really -- it's not really a substantive law. It's like rules for how to review --

MR. JACOBSON: Yeah.

THE COURT: -- agency action.

MR. JACOBSON: Yeah.

THE COURT: So when would it authorize?

MR. JACOBSON: I think the way we would put it is that the termination was not authorized by law because the way they carried out the termination violated the APA's restrictions on agency action.

THE COURT: Does the APA really place



restrictions on agency action, or it just set up standards for reviewing? I can't keep this in my head long enough to articulate it for you, but it seems different to me.

MR. JACOBSON: Your Honor, I'll say two things. One -- well, three things. One, I think that's like a very metaphysical question that, you know, administrative law scholars have debated for a while. Two, we do cite two District Court opinions in our brief that have ruled in our favor on this theory.

The third thing I'll say, Your Honor, though, is if Your Honor has questions about this, you know, I would say of all of our theories, this is the one we are least wedded to. And, so, if it means moving on without this, you know, subtheory, we're not going to go kicking and screaming on that.

THE COURT: Okay.

MR. JACOBSON: So, now, the next theory of breach in count one is DOE, the agency under this regulation, that says you can terminate where the award no longer effectuates the program goals or agency priorities means the program goals or agency priorities at the time the award was issued. And as we noted in our brief, Your Honor, the District Court in Massachusetts in the Jersey case recently agreed with our view of this

provision and rejected the Government's view.

And that's the case based on the plain text and, also, if you look at the regulatory history, it uses the word "the," "the program rules and agency priorities," which suggests one set, and it uses that after saying "no longer effectuates," which, you know, is a reference to a point of time.

In addition, on top of that -- you know, the text is most important -- you have the regulatory history. When OMB first issued this provision in 2020, the preamble to the rule described, like, what was this getting at, what kind of scenarios was this provision meant to address? And it said it was for scenarios such as, like, when a project would no longer meet the intended objective of the agreement, which obviously means, you know, the objective that was intended when they awarded it, or where a project had "become ineffective at meeting the goals and priorities." So you can imagine lots of scenarios where, you know, a grant was awarded, everyone had high hopes for whatever reason within the control or not within the control.

You know, maybe it turns out their technology doesn't work or whatever, they would be able to terminate because the grant no longer is able to achieve the program goals or agency priorities. I don't think the



Government has made any argument here that Sublime's award was failing to meet the goals and priorities at the time the award was issued. So if Your Honor agrees with our view of that provision, then that means that count can go -- or that theory within count one can go forward.

And then the final one -- I'm sorry, Your Honor.

THE COURT: No, no. Go ahead.

MR. JACOBSON: The final -- and I know we've had a lot in count one. The final theory in count one is that the language saying "if the award no longer effectuates" means that they have to actually provide some individualized consideration of the award and whether it effectuates program goals and priorities, regardless of whether it's new priorities, old priorities, you can't -- you know, anyone who would have entered into this agreement, right, we interpret contracts based on the reasonable expectations of, you know, reasonable contractors, nobody would have thought, yeah, I'm agreeing to this but that means the Government could simply close its eyes and spin a roulette wheel and say, oh, the one that comes up is the one that no longer effectuates program goals and agency priorities.

Within this is an assumption that there will be determination that this award doesn't, and what we



alleged in our complaint more than plausibly is that there was no such individualized consideration here. It was simply a blanket mass termination of every award issued under this particular provision of the Inflation Reduction Act, regardless of the fact that, you know, in Sublime's case, they actually were not just doing green things, they were building cement.

So those are our theories on count one, Your Honor, unless you have questions on that.

THE COURT: Okay. No, in order to deny the motion to dismiss, I just have to agree on a few of those theories, right, or one of those theories, presumably.

MR. JACOBSON: And the first three that I mentioned, the Government doesn't even raise in their opening brief.

THE COURT: Right, I understand.

MR. JACOBSON: So we think that's sort of the most straightforward path, but we're -- you know, I'm happy to have Your Honor address all of them.

THE COURT: Take any path.

MR. JACOBSON: Yes, exactly. I'm going to skip ahead to count three, because that's the order the Government went in --

THE COURT: Okay.

MR. JACOBSON: -- which is the abuse of



discretion claim.

THE COURT: You're giving up on count two?

MR. JACOBSON: No, I just think government counsel addressed in that order. I'm happy to do it in any order.

THE COURT: He didn't address it in a way that was positive for you in oral argument. Do you have an argument about the duty of good faith?

MR. JACOBSON: Oh, absolutely, yes.

THE COURT: Oh, okay.

MR. JACOBSON: I'll go there. Sorry. So the implied duty of good faith and fair dealing, as I think Your Honor alluded to, you know, the Government's brief, and I think, you know, one way government counsel described it is that you need to point to some specific promise that was violated. Obviously, that can't be what the implied duty means. Otherwise, that would just be a breach of contract case.

I think in our view, the kind of best crystallization of what the implied duty and good faith and fair dealing means in this context is Chief Judge Solomson's decision in the Housing Authority case from 2020. We cite that in our papers. I'm happy to give Your Honor the cite, but, there, the Chief Judge explains that -- and it immediately uses language like, you know,

57

what you get in the abuse of discretion standard.

It says that the implied duty, and I'll just read this into the record, "limits the manner in which a party who is vested with discretion under the contract may exercise it by requiring that party to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."

And, so, you know, here, you know, on count two, it's pled somewhat in the alternative to count one. So, you know, on count one, we say we think the express terms say they had to provide individualized consideration of our award. Even if Your Honor disagrees or decides that the contract doesn't really speak one way or another to that, our submission is that the implied covenant of good faith and fair dealing certainly requires that, that the reasonable expectations of any party entering an agreement would be that they wouldn't terminate the award on this basis without actually looking at what the project is doing.

And, then, there's all of the other, you know, arbitrary and capricious indicia that we talk about. And one other helpful thing about that opinion from the Chief Judge is he explains that the use of arbitrary and capricious here sounds like the APA, but is different

58

than the APA standards because I think the Government in that case had made a similar argument that this is really just an APA claim. And he points back to, you know, long decades of case law that describes, no, when you exercise discretion that you have under an agreement, it can't be done in an arbitrary and capricious manner. So it has a specific meaning in this context.

In terms of why this was arbitrary and capricious, which also overlaps with count three, you know, I'd say, like, if you asked someone to come up with, like, a law school issue spotter of all the ways in which a termination could be arbitrary and capricious, this would tick off all the boxes. It was rushed. You know, they announced this review process. They said it would be done on a case-by-case basis. Two weeks later, Sublime, without having heard anything from the Government, gets a termination letter.

The very first ground in the termination letter lists something that's just not true. That is, you know, definitionally arbitrary. There is no, like we allege, there's no indicia, that the Government actually made any determination that this particular award didn't meet agency goals and priorities. You know, seemingly, you know, like I said, close your eyes and just put your thumbtack on the wall or whatever and say, we're going to

59

terminate this one because we -- you know, it was part of this bigger batch.

In addition, they sent the -- as we note in our complaint, to show, like, kind of the capriciousness of this, two weeks after they announce the process, this termination letter gets sent, and it doesn't even get sent to the points of contact at Sublime. It gets sent to a junior accountant at Sublime who just stumbles upon it in his inbox.

And, so, everything about this just sort of screams out, this is a rushed, haphazard, arbitrary process that did not reflect, you know, what any reasonable person would expect of a government process to terminate an $87 million award meant to carry out a congressional statute.

On abuse of discretion, I would very strongly disagree with Mr. Lewis in terms of is there precedent here. There is quite clear precedent. Now, it's in the procurement contract context of termination for convenience because obviously, as Your Honor knows, there haven't been many grant termination cases, you know, before the last year or two, but in that context, even where the Government has much broader discretion than it does here, both the Federal Circuit and the Court of Federal Claims has said that the Government has to

60

exercise that discretion in a way that is not an abuse of that discretion. And, so, even where the contract says the Government can terminate basically for whatever reason it wants, it can still be an abuse of discretion, and that use of discretion amounts to a breach of contract. So it is a breach of contract claim.

THE COURT: Well, what's the difference between counts two, three, and four?

MR. JACOBSON: Yeah, so this is -- so counts two and three, I'll admit, is partly a function of just kind of the muddled case law in this, where sometimes courts, like in the Chief Judge's opinion, describe it as implied duty of good faith and fair dealing. Counts three, some courts describe it as abuse of discretion. I'll admit that the -- you know, the facts underlying both highly overlap.

Count four is different. Count four is bad faith, which has the specific meaning in this Court of animus.

THE COURT: Right. That's a tough one for you, isn't it?

MR. JACOBSON: I don't think so, Your Honor. I mean, it's inherently a tough claim. Before I go to that, just to finish one thought on abuse of discretion, the Federal Circuit actually just last year recited --

61

you know, validated the standard that there is a standard for this claim. That's in the -- it's called 27-35 Jackson Avenue case from 2025, we cited in its brief. And it says that, you know, the Government abuses its discretion where "the exercise" -- "the Government's exercise of its discretion was unreasonable or arbitrary and capricious." And, so, that's the standard that, you know, judges of this Court, like in the TigerSwan case and the Gulf Group case we cited have found terminations to be breaches of contract where the Government abused its discretion. So there's ample precedent there.

So animus, count four. We readily admit that, you know, without discovery, we don't have anything to point to where words came out of somebody at the agency's mouth "I hate Sublime Systems" specifically, but that is not the standard we need to meet for animus. The standard is just animus, and obviously the Government's decision-makers can have animus against a discrete defined group of people without knowing every single person within that group.

You know, I don't want to go too far afield, but you can think of lots of examples in history where that's the case when there's animus. You know, if an agency official said, I just really hate members of a certain race, I think they can't be trusted, I think

62

they're -- you know, all sorts of terrible animus-laden things, and then they terminated all the awards held by members of that racial group or religious group.

I don't think there could be any reasonable dispute that that is a bad faith termination because there was animus, even if they --

THE COURT: So how does that compare to this, though? What are you claiming is the animus? Who was being targeted?

MR. JACOBSON: The group of recipients that in the administration's view was awarded awards by the prior administration after the election. The press release that went out in connection with Sublime's termination emphasized that this was awarded after the election and most importantly to companies that they think are part of this Green New Scam that are carrying out these green energy projects that are inherently a scam.

And there's a -- you know, we pointed to a couple of the statements which we think are judicially noticeable. They're government statements in the official government proceedings. But, you know, we would submit that that shows, at least at the pleading stage, that there was animus towards this group.

And one case I would cite on this front, Your Honor, is recently Judge Tapp issued a decision in the

63

Danziger case about USAID contractors, and the Government made the exact same argument. Well, you know, a specific contractor can't show that they hated that company. And Judge Tapp said, no, you can hate a group as a group, and pointed to statements like from Elon Musk about how much he hated the group of USAID awardees.

And Judge Tapp not only denied -- he denied a motion to dismiss, but then he actually certified a class recently, you know, where the Government raised many of these same arguments that it's too individualized, and he rejected those. So we would point to that as maybe the closest analog.

Unless Your Honor has further questions.

THE COURT: Okay. No. That's good.

MR. JACOBSON: Thank you.

MR. LEWIS: Thank you, Your Honor. I have a number of things here, and I apologize as I struggle to read my own notes based upon the discussion that came up. I'm also happy to jump into any topic that you have following the arguments that were raised.

I do want to just, because they also started with the damages issue in terms of whether or not the Court can address the damages at the motion-to-dismiss stage, my colleague here --

THE COURT: It's really a question of whether I

64

could do it. I mean, there's that question, but it's why would I do it?

MR. LEWIS: I mean, I think that --

THE COURT: I have enough work to do.

MR. LEWIS: Don't we all, Your Honor? Don't we all? I think that's just because it's simply right. I mean, we have a legal instrument that sets a bound on what they can recover here.

THE COURT: Yeah.

MR. LEWIS: At some point, the Court will necessarily decide it. We have already briefed it, and it's a pretty clear line of case law. As we identified in our opening argument and in our brief, most of their argument about this budget period versus option year restriction is more about the form of our filing rather than necessarily the substance.

I think the substance is particularly typical to get around, and they point the Court to cases like San Juan and Alleva. In our reply brief, we identified that these cases are fairly differentiable. I mean, San Juan involved a case where the trial court identified that, I think, damages wouldn't even be available, that it was equitable relief. And, so, the Federal Circuit sent it back.

Alleva involved the pleading of sufficient



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

facts to support a conclusion that would entitle the Plaintiff to damages. That's not sort of the realm of case we're in here. We're talking about essentially an argument that Sublime is not entitled to option years, Sublime is not entitled to future budget periods, and should the Court find that Sublime is not entitled to these future budget periods, that will, in and of itself, necessarily cut out any damages that would be associated with the expectation of those budget periods based upon the application of the precedent, like the Gulf precedent that we identified in our brief.

Additionally, we would again address that we -- not a lot of comparable case law here. I think the Indyke decision is compelling. It offers good analysis into dismiss, to strike, in the context of a case where -- or a number of cases where punitive damages were simply unavailable as a matter of law. And I think that's probably the most akin situation here where this is just a circumstance where these damages would be unavailable as a matter of law, and it's because the underlying contractual right to future budget periods is unavailable as a matter of law.

And, additionally, I'll just emphasize if the Court finds some -- some problem with the dismissal/ strike, this is a classic summary judgment topic as well,



and it is fully briefed, and we think it could be easily construed as a motion for partial summary judgment just on the simple issues of damages, because I, myself, have written two to three of those in the past year and a half cutting out classes of damages at summary judgment, and it is kind of the prototypical form of resolving this type of dispute. It's just while we were already moving to dismiss the counts, this seemed to be the obvious time to also address sort of the scope of the case before us.

While we're talking about the scope of the case, my colleague here identified that there is -- that they would want discovery into whether or not some individual employees thought that there might be bad faith or a breach of good faith or some individual employees could identify that DOE's determination of Sublime's programs was inconsistent with DOE's policy generally, and that should get discovery to facilitate these requests.

We just want to point out that that discovery would be, in and of itself, not relevant because it does not matter what any individual DOE employee thought about whether or not the ultimate goal of Sublime's project was consistent with the agency priorities. It's what Secretary Wright or the individuals he delegated his authority to determined to be the goals of DOE as it



relates to these contracts.

And I would -- I did also want to -- it looks like I lost the Post-it that I actually just put down in here.

THE COURT: It just disappeared?

MR. LEWIS: It just disappeared. There was a -- there's a -- we cite a case in our brief, a Federal Circuit case, identifying that the -- it's not the purpose of the Court to second guess the standards for here a termination for convenience because that's where the applicable case or the relevant case law typically is, but it's not the place for the parties to second guess the standards for a termination for convenience.

I think it's pretty clear Federal Circuit case law applied to just a slightly different scenario. Even if this Court -- and my opposing counsel might argue that there is some differentiating facts between agency priorities and the Government's interests, regardless, I still think that the precedent determining that it is ultimately the agency's authority to determine whether or not a termination is appropriate, not the Court's, would still be the relevant analysis in either scenario.

My colleague here came up and talked about the statutory funding arguments about the termination of



the OCED awards, the Office of Clean Energy Developments, en masse. I myself do not have a lot of information about the other awards that were terminated or not terminated, but I would point the Court to -- this is a Tucker Act case about the breach of a specific contract. I do not know how the Court could go to some sort of Anti-Deficiency Act analysis through the lens of this contract to resolve whether or not the agency abused its discretion by, you know, not pursuing awards of future OCED grants after some had been terminated.

THE COURT: I don't think they're saying they abused their discretion. I think they're saying they didn't have any discretion. Maybe I don't understand this yet.

MR. LEWIS: I think regardless of the form that the argument is taking, because perhaps that is the correct analysis, regardless, the Tucker Act case about the contract, I think, is not the right mechanism by which to review, you know, agency spending analyses. And, factually, I want to point out that these grants were terminated in May 2025, and they did correctly point out, Sublime did correctly point out, that I don't know how many new OCED grants or cooperative agreements were awarded following the initial round of termination, but OCED funding was cut in the Big Beautiful Bill. That was

just a -- that was -- it started being floated just a few months later, prior to, you know, the shutdown and ultimately passing that bill.

So I think there'd be a real question whether or not DOE could actually facilitate funding all of these new programs where it was, you know, expecting and ultimately Congress pulled funding from facilitating these type of awards. So that gets a little more complicated into appropriations, but, again, I think that for the purposes of our motion to dismiss especially, all these issues should be resolved by merely focusing in on what actually was pled in the complaint and specifically in the individual counts, individual counts such as abuse of discretion or breach of contract.

THE COURT: What about the Plaintiff's argument that you didn't move to dismiss the breaches that he identified?

MR. LEWIS: That's actually my next line right here. I had it right here. But I think that simply misconstrues our motion, and we tried to reframe it a little bit in our reply brief. Once again, our argument is not that, you know, we need to move to dismiss on every single count. I mean, essentially they threw a lot of concepts at the wall with very little development. And it's a "how can you argue against these seven



different arguments in order to dismiss or otherwise resolve this case"?

Instead, our point is that regardless of the individual qualms it has with the various elements of the dismissal, any of those issues would be harmless error because DOE simply had the authority to terminate the grant for its change in agency priorities. And, so, regardless, if Sublime were to show that our individualized electrical --

THE COURT: But how do we know that they would have terminated it if they knew that two of the grounds were not legitimate grounds? Maybe they -- right? I think that's what Mr. Jacobson was saying, it was like a causation kind of thing.

MR. LEWIS: I don't agree with that analysis, Your Honor. I think the reason that we know that they wouldn't have terminated outside of those grounds is, I mean, he referenced to the fact that all the other OCED grants, or at least many of the other OCED grants, were also terminated.

THE COURT: Everything was terminated.

MR. LEWIS: I don't know if it was everything. I just don't factually know the background. But, I mean, they did some individual analysis. Sublime disagrees with the individual electricity consumption analysis.



Regardless, these were almost certainly going to get terminated regardless, but, nonetheless, DOE did do an individualized analysis, then determined that it no longer wished to continue this award.

THE COURT: Okay.

MR. LEWIS: I do want to address the New Jersey v. OMB decision that came out recently. I'm sure that you may have had an opportunity to read it or, if not, will be shortly.

THE COURT: I did. I also read your response to it.

MR. LEWIS: Right. I mean, our position is relatively simple. We just think it's an erroneous analysis. Our brief sets forth more of the specifics because we went through in some detail arguing about it. On a general level, we'd point out that, I mean, both Sublime's and the District Court of Massachusetts' read of the regulation is simply it breaks down the syntax and the individual, like the word "the." It pulls apart the word "the," and the interpretation of this provision in a way that purely changes the meaning for their convenience and otherwise generally misses the forest for the trees. It's just -- it's an -- it's a purely convenient interpretation of this specific language that is not consistent with what any reasonable person reading the



regulation in full would conclude.

I'd also note that as we addressed in our brief, the 340(a)(4) termination standard, the agency priority termination standard under New Jersey v. OMB's interpretation, it renders that interpretation standard as surplusage. Essentially, the New Jersey v. OMB and Sublime have argued that there is some sort of frozen-in-time, at the time of contract award, that is the only time that the agency priorities matter for the purpose of termination. That would be very inconsistent with the Government's general practices in terminating contracts, and we think with the express desire to change the grant and property agreement termination structure in the Federal Register or, again, we provided those citations in our brief.

But regardless, the Court in New Jersey v. OMB essentially determines that, well, agency priorities -- it needs to be the agency priorities only at the time of award, but the agency would not award a contract if it wasn't its priority at the time. There'd be no reason to include this entire prong. If it wasn't consistent with a program goal or an agency priority, then the agency simply would not be entering into these grants or cooperative agreements.

THE COURT: Well, maybe it just stopped serving

73

those interests somewhere along the line.

MR. LEWIS: Well, I think that's --

THE COURT: No longer -- I forgot the language -- no longer -- no longer effectuates the interests.

MR. LEWIS: And I think that our argument is consistent with the "no longer effectuates the interests."

THE COURT: Okay.

MR. LEWIS: And just for reference, I mean, we are in the middle of -- and these were certainly a result of changing administration, but the read of both the District of Massachusetts and Sublime does create a little bit of a strange situation where when administrations are changing, for example, I mean, let's say that in three years or two and a half years, whatever it is, this current administration puts out a bunch of grants for coal development, right, when we necessarily have a new administration in 2028 addressing, going through and analyzing their grants, that new administration could not, then, terminate those grants without incurring massive costs, despite the specific language addressing them.

It's one of those analyses that cuts both ways, and I think it creates a little bit of a strange situation where it incentivizes administrations on

74

their way out to enter into long-term grants or cooperative agreements and essentially bind the next administration into the former administration's policy goals, and if they do not do that, then, otherwise, the new administration has to incur substantial costs, as alleged here, in the millions and millions of dollars, in the form of, you know, expectation damages under the agreement generally. So I think it's just a -- it's a read that's inconsistent with the federal contracting structure with the desired changes of OMB and with a practical and policy-based interpretation of what makes the most sense within this context.

Addressing the abuse of discretion claim, I do think that Your Honor pointed out that or questioned to the extent to which Sublime might be incorporating the APA, and I believe in their argument just now they did address that, in fact, in their response brief, they state that, you know, the APA was violated. At page 30 of their response, they do pretty explicitly state that they are trying to incorporate the APA standards into DOE's actions with regard to this award without any APA tie-in or APA tether to the actual terms of the agreement.

And, so, again, pointing the Court to the specific and very APA-based allegations in the abuse-of-

75

discretion claim in count two, if I recall correctly, if you look at that count two and draw the line between the count two and their APA-based arguments, it's simply not a claim that survives, and it's not a claim that targets the -- as pled, not a claim that targets the sort of amorphous abuse of discretion concept that is out there. And we agree that courts have used the abuse of discretion language, but what is pled here does not target that specific language or standard.

And to the extent that they quoted, and hopefully I have the numbers right here, the 27-35 Jackson case for the idea that there is some abuse of discretion standard, I would encourage the Court to read that case because my recollection -- I wasn't able to pull it up right here in front of me -- was that that case contains more of the same sort of platitudes or generalities, axioms about abuse of discretion, but it doesn't actually sort of enumerate some sort of abuse of discretion standard, whereas if you were to search for a bad faith claim or a breach of the duties of implied good faith and fair dealing case, you would see enumerated standards that set forth what you would have to prove to succeed in that type of claim. And that simply doesn't exist in any of the cases that I have seen thus far.

And I do want to also point out, while we're

76

discussing sort of the APA standards, that sort of the implied duty of good faith and fair dealing and the breach of contract arguments that we also heard from my colleague here when he stepped up, my understanding, and I think it's consistent with these -- the allegations brought, is that most of the allegations brought in this case are simply derivations from APA-esque standards. There is no requirements in the termination provision or similarly in the termination for convenience context, which we agree is not the same thing, but certainly parallels the sort of situation we have here that requires decision-making or specific articulation of decision-making processes.

You know, we're not required to write an essay for every termination. There's no requirement that we're required to meet with contractors, grantees, partners for the termination of awards. And we're not aware of any requirement that these grantees are entitled to some level of heightened communication or standards beyond the Government's own innate ability to make decisions onto how not only it spends its money, but in situations like this, gives money to third parties. That is inherently the Government's decision, and without a direct incorporation of the APA into the agreement, which we think kind of infects many of the arguments that have

77

been brought, there is no way to establish or -- let me rephrase that -- the claims that have been pled here simply cannot survive a motion to dismiss.

Finally, I want to jump to the bad faith argument. They brought up the Danziger case. We have, of course, read the Danziger case. I would identify to the Court that it is -- and I believe it's the most recent case addressing potential bad faith. The Judge, I want to say Judge Tapp, does not go into particular detail into the decision on the analyses therein. I would encourage the Court to actually read the complaints in Danziger. What you would find is there is substantially more bad faith allegations more directly targeted at the particular plaintiffs in those cases.

And, then, to the extent that there is general allegations about the Plaintiffs, as my colleague identified, Danziger is a situation where it's also a class action. So generalized allegations about a group, I think, are more relevant to a class action plaintiff category than it would be to an individual party like Sublime.

Regardless, I believe that as reflected by my colleague here, he identified some allegations that I believe Elon Musk may have said some things about USAID contractors individually while in the context of his

78

employment. That's simply not the circumstance we have here in our bad faith case. At most, what Sublime has raised in its response brief is Secretary Wright's perspective that spending on certain energy-saving programs is a scam, a Green New Scam.

Once again, that's simply just not a targeted comment about Sublime or a group that Sublime is a part of. It's commentary about a type of work or, here specifically in the context of a subcommittee meeting, the type of work that DOE wishes to fund going forward. And, so, it's a policy commentary, a charged policy commentary, but simply not a bad faith allegation.

THE COURT: Okay.

MR. LEWIS: Unless you have any additional questions, Your Honor.

THE COURT: No.

Did you have something else you wanted to say? You don't have to.

MR. JACOBSON: In that case, I will...

THE COURT: Okay. Well, I had given this some thought before today, and I'm going to deny the Government's motion to dismiss or, in the alternative, to strike the damages theories. Let me explain briefly why.

The Government is contending that the terms and conditions of the award governing the go/no-go review

79

show that Sublime had no entitlement to continuation of the award past budget period one; therefore, according to the Government, Sublime's damages requests are greatly inflated.

Sublime responds that the criteria set forth for the go/no-go reviews were objective and that so long as the objective criteria were met, the award would have to be extended. The Court's not going to address that. I thank you for your arguments on that point. A motion to dismiss a claim under 12(b)(6) is not really generally a proper vehicle to challenge the viability of a plaintiff's damage theories, so long as the plaintiff alleges that it suffered at least some economic injury as a result of a breach, and Sublime has done that here.

A motion to strike under 12(f) is also not a proper vehicle for challenging damages theories or calculations. Those motions are disfavored and are limited to circumstances not presented here where a pleading includes "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Damages theories, even if they don't have any merit, don't fall under this rubric generally. And I would cite you to a case by the Ninth Circuit called Whittlestone vs. Handi-Craft Company, 618 F.3d 970, 973-74, Ninth Circuit 2010.

80

And in addition, as the Federal Circuit held in the San Juan City College vs. United States case, 391 F.3d 1357-1362, Fed. Circuit, 2004, it would be premature to decide whether a plaintiff could recover particular forms or amounts, with some exceptions -- I recognize the punitive damages case -- to particular forms or amounts of damages unless and until the Court of Federal Claims decides that the Government breached an agreement. That's a quote. Well, this is a quote actually: "If the Court were to hold that there had not been a breach, there would be no need or occasion to determine what damages, if any, the Plaintiff could recover for a breach." So for those reasons, the motion to dismiss or, in the alternative to strike the damages theories, is denied.

The Government's motion to dismiss counts one to four of a complaint under 12(b)(6) is also denied. The standard for 12(b)(6) requires me to accept as true all factual allegations in Sublime's complaint and indulge all reasonable inferences in favor of Sublime. Then, I'm to determine whether those factual allegations state a plausible claim.

As to count one, breach of contract, Sublime has stated a claim for breach of contract in several respects. It alleges that the Department of Energy

breached the contract by relying on two grounds for termination that are not included in the terms and conditions, including one of which was also allegedly factually false, which was that Sublime only considered the emissions reduction at the facility and didn't consider emissions generation of energy to power the plant.

Sublime also alleges that contrary to DOE's determination that the award no longer effectuates the program goals or agency priorities, the agency continues to effectuate the agency goals and priorities that existed at the time of the original award. In that regard, the Court is aware of the New Jersey vs. OMB decision, which held that the termination clause doesn't authorize terminations of awards that are based on new program goals or agency priorities.

They're not identified until after the award has been granted, but I don't really see any reason for me to pass -- or, you know, address that holding because even assuming the termination clause contemplates the termination of awards that don't effectuate agency program goals that have changed under the new administration.

Sublime alleges that the award does effectuate those goals, and so the termination on that basis was a



breach of contract, whether or not the New Jersey decision was correct. For these reasons, and without getting into the parties -- all the other disagreements regarding the interpretation of the termination clause, the Court finds that the Plaintiffs have stated a claim for breach of contract.

Count two, breach of the implied covenant of good faith and fair dealing, a claim for breach of the implied covenant of good faith and fair dealing is stated where a party alleges that another has acted or exercised its discretion under the contract arbitrarily, capriciously, or contrary to the party's reasonable expectations.

Sublime identifies a number of allegedly arbitrary actions the Department of Energy took in exercising its discretion to terminate the award. These included its failure to conduct an individualized assessment of Sublime's project, its failure to engage with Sublime concerning the reasons for the termination, its failure to provide an explanation for the termination decision beyond the boilerplate recitation of the language of the termination clause, so that at this moment we still don't really know why the contract was terminated.

Abuse of discretion, count three, for similar



reasons, the claim has been stated for abuse of discretion, while the termination clause afforded DOE discretion to determine whether its terms were met, that discretion cannot be exercised in an arbitrary fashion and the allegations in the complaint are sufficient to get us past this stage, the motion-to-dismiss stage, and to deny the motion to dismiss.

And finally, count four, bad faith, the complaint alleges that the decision to terminate was based on animus towards members of the group to which Sublime belonged, awardees with projects aimed at reducing carbon emissions that were approved between Election Day and January 20th. It alleges as supporting facts the decision-making process DOE employed when it terminated the award without notice to Sublime or opportunity to respond, comments by the Secretary regarding the so-called Green New Scam, and the employment of what Sublime says is a pretextual justification regarding a fault in its application that it says was not true.

Now, the Court recognizes that Sublime faces a hurdle to prevail on its bad faith claim as it must overcome a presumption that government officials carry out their duties lawfully and in good faith, but Sublime is not required to prove bad faith at this juncture. It



is enough for it to allege sufficient facts that, when accepted as true and with reasonable inferences drawn in its favor, plausibly state a claim. In my view, Sublime has met that burden here. So the Government's motion to dismiss is denied.

Now, the next thing we have to do is set a schedule for answer and I guess a joint preliminary status report. Have you all thought about that?

By the way, I know it's painful to listen to that. I went through that when I was a lawyer, and it drove me crazy, and I don't even like doing it because I'm conflict-avoidant, but I thought it would move things along.

MR. JACOBSON: Your Honor, my colleague, Mr. Robinson, is prepared to address that.

THE COURT: Okay.

MR. ROBINSON: If I may?

THE COURT: Yeah.

MR. ROBINSON: So just a few thoughts. We haven't, like, met and conferred yet on a schedule, but just looking at the parties' briefing on this issue, I know that they talked that they'll need to file an answer. We'd be happy to waive the answer requirement to move things along.

THE COURT: Okay.

MR. ROBINSON: And our request would be what we requested in the motion to expedite, which is that we would file a joint preliminary status report in 14 days, setting out a proposed schedule. We have a proposed schedule today, if Your Honor wanted to get into it, from our end, but we're also happy to just submit that in 14 days.

THE COURT: Why don't you all submit that with the joint preliminary status report.

Is that okay with the Government?

MR. LEWIS: So I'm not sure if I stand up or if you want me to talk from here. This might be some back-and-forth. There might be a lot of talking back and forth.

THE COURT: Whatever you prefer.

MR. LEWIS: Your Honor, we don't have a problem with -- certainly, we don't have a problem with the waiving of the answer. I mean, we all know they're largely not particularly helpful documents for any party involved. So to the extent they're trying to expedite some sort of schedule in that way, that's fine on our end.

We have not yet had the early meeting of counsel to discuss many of these things, and, so, I think that would serve as the trigger point for then advising



on the JSR, because I think there's probably a number of things to discuss, especially within the context of your ruling here, potentially the scope of what discovery looks like.

I would say that in particular in a case like this, where typically if a party is terminated in a relationship with the Government, the party submits costs associated with that termination to the Government for consideration, I think that an initial disclosures requirement before the joint preliminary status report would actually be helpful in terms of setting the scope of what is Sublime actually trying to tie its particular damages cost to, because I think those particular damages costs are going to set -- set out what discovery will look like between both parties. And knowing what discovery will look like will be probably the biggest thing by which we could then decide what the case schedule looks like.

THE COURT: So what are you suggesting?

MR. LEWIS: I would suggest that -- I mean, I'm happy to meet with counsel within the next seven days to try to get -- wrap our head around anything, and then I would say initial disclosures typically take a little bit of time, too, because you have to, especially in a case like this, they've got to quantify damages, we have to



identify relevant witnesses. I would request the typical time period from that.

Once we have initial disclosures, I'm happy to fairly quickly move into the JSR in something like a week, a week or two, and file the JSR. So I'm happy to somewhat expedite the schedule over this time frame. I just think that there's an important prerequisite.

THE COURT: No, I'm just trying to understand what you're suggesting the schedule should be. So we're going to waive the answer. So the next thing that has to happen is the filing of the joint preliminary status report.

MR. LEWIS: I haven't -- to the Court. That would be the next filing before the Court.

THE COURT: Right.

MR. LEWIS: The next thing that would happen would be the early meeting of counsel.

THE COURT: Yeah, right, right. Usually those things are done pretty simultaneously.

MR. LEWIS: We have a slight disagreement.

THE COURT: Well, she's going to win.

MR. LEWIS: That's where it gets tough, Your Honor. I do think that in this situation the initial disclosures would be particularly helpful for us in determining what the case schedule goes like. And I have



to imagine that we will have a lot of things to talk about regarding scope of the case following especially the damages ruling.

So I would -- I would propose an early meeting of counsel within a week, the exchange of initial disclosures within two weeks, and then the following week we could submit a JPSR. So condensing what would otherwise be a 49-day timeline into something like -- I believe that's 28.

THE COURT: Does that work for you all?

MR. ROBINSON: Yeah, I just don't. To keep things moving, I think our position would be a joint report in two weeks. We're happy to provide initial disclosures to counsel as soon as they're ready, and I think we could do that quickly. I just don't think they'll be that useful in discussing a discovery schedule to get this case resolved in the next 9 or 10 months. I think we should use every week that we have.

THE COURT: Okay. Let's get your meeting with each other and let's have the joint preliminary status report in two weeks. That's usual. That would be my usual practice. So it's a little less than you asked for.

MR. LEWIS: So for clarity, Your Honor --

THE COURT: Yeah.

MR. LEWIS: -- within two weeks of the early meeting of counsel or two weeks from today?

THE COURT: No, within two weeks of today. Sorry.

MR. LEWIS: It's a rough day for me.

THE COURT: Yeah, and that's okay. Tomorrow will be a better day, perhaps.

Okay, well, thank you all very much. We're adjourned.

THE CLERK: All rise. This Honorable Court is adjourned.

(Hearing concluded at 3:42 p.m.)



CERTIFICATE OF TRANSCRIBER

I, Sara J. Vance, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-titled matter.

DATE: 8/24/2026 S/Sara J. Vance
SARA J. VANCE, CERT

A

**ability** 16:18 76:20
**able** 53:23,24 75:14
**above-titled** 90:6
**absolute** 23:23 24:1
**absolutely** 21:8 56:9
**abstract** 26:17
**abuse** 26:5,9,16,17 26:20,22 28:9,10 28:14,16,18,19,22 29:5,6,11,15,22,25 30:3,7,16 36:13 51:10 55:25 57:1 59:16 60:1,4,14,24 69:13 74:13 75:6,7 75:12,17,18 82:25 83:1
**abuse-of-** 74:25
**abused** 61:10 68:8 68:12
**abuses** 61:4
**accept** 80:18
**accepted** 84:2
**accountant** 59:8
**accurately** 21:19
**achieve** 53:24
**act** 28:5 29:8 31:14 31:15 39:23 47:12 50:11 51:3 55:5 68:5,7,17
**acted** 82:10
**acting** 37:14
**action** 26:14 51:18 51:24 52:1 77:18 77:19
**actions** 38:13 74:21 82:15
**activities** 15:21,23 16:23
**actual** 20:13,14 27:10 29:17 43:2 43:14 45:3 74:22
**added** 16:6 19:17 23:10
**adding** 43:14
**addition** 53:8 59:3 80:1
**additional** 13:7 17:23 32:4,5 36:2 78:14
**additionally** 19:20 27:18 30:24 65:12 65:23
**address** 7:12,14 9:1 9:22 10:10 14:9 17:2 20:17 25:23 27:20 36:24 37:17 44:8,17,24 47:23 53:13 55:19 56:6 63:23 65:12 66:9 71:6 74:17 79:8 81:19 84:15
**addressed** 11:22 21:19 44:21 49:12 56:4 72:2
**addressing** 17:16 32:7,9 37:25 39:1 40:6 73:18,22 74:13 77:8
**adjourned** 89:9,11
**adjudicate** 48:10
**administering** 9:20
**administration** 45:16 47:10 48:3 48:23 49:7 62:12 73:11,16,18,20 74:3,5 81:23
**administration's** 6:9 24:19 47:25 48:14 62:11 74:3
**administrations** 73:14,25
**administrative** 18:16 28:4 52:7
**admit** 60:10,15 61:12
**advising** 85:25
**afforded** 83:2
**afield** 61:21
**afternoon** 4:15 41:12,13
**agencies** 25:10
**agency** 5:22 18:7 19:9,13 20:2 21:23 22:16 23:7,17 24:25 27:14 29:20 31:9 46:24 47:18 47:25 48:15 51:18 51:24 52:1,19,21 52:22 53:4,25 54:23 58:23 61:24 66:23 67:18 68:8 68:19 70:7 72:3,9 72:17,18,19,22,22 81:10,10,11,16,21
**agency's** 6:6 61:14 67:20
**agree** 12:5 55:11 70:15 75:7 76:10
**agreed** 11:1 52:25
**agreeing** 54:20
**agreement** 5:5 10:1 10:25 13:21 16:12 16:15 18:5 19:7 26:12,13 30:11 32:1,10 33:4,7,16 34:12,15 35:4,5,17 35:18 47:20 53:15 54:17 57:18 58:5 72:13 74:8,23 76:24 80:8
**agreements** 5:3,18 19:6,15,18 21:18 25:6 40:5 68:23 72:24 74:2
**agrees** 54:3
**ahead** 14:21 15:7,8 26:1 30:21 54:8 55:22
**aimed** 83:11
**air** 20:25
**akin** 65:18
**allegation** 25:14 35:10 38:23 40:8 41:7 78:12
**allegations** 5:13,15 6:18 25:12 26:18 37:13,20 39:16 40:1,12,15 41:3 74:25 76:5,6 77:13 77:16,18,23 80:19 80:21 83:5
**allege** 5:1 26:10 37:12 58:20 84:1
**alleged** 38:15 55:1 74:6
**allegedly** 81:3 82:14
**alleges** 79:13 80:25 81:8,24 82:10 83:9 83:13
**alleging** 33:18
**Alleva** 64:19,25
**allocable** 11:11
**allowable** 11:11
**alluded** 41:17 56:13
**alludes** 14:25
**alternative** 8:10 57:10 78:22 80:14
**amend** 16:14 38:22 43:12
**amended** 14:5,10
**amendment** 16:20
**AMERICA** 1:7
**amorphous** 30:16 75:6
**amorphously** 35:20
**amount** 12:13 47:14 50:13
**amounts** 60:5 80:5,6
**ample** 61:11
**analog** 63:12
**analyses** 68:19 73:23 77:10
**analysis** 6:19 19:6 26:12 29:15,18 30:13 65:15 67:22 68:7,17 70:15,24 70:25 71:3,14
**analyzing** 73:19
**and-forth** 85:13
**animus** 37:17 38:19 60:19 61:12,16,17 61:18,23 62:6,8,23 83:10
**animus-laden** 62:1
**announce** 59:5
**announced** 5:16 58:14
**answer** 84:7,23,23 85:18 87:10
**Anti-Deficiency** 68:7
**anyway** 46:7
**APA** 27:13,15,17 29:8 30:25 31:7,8 31:16,23 32:9 51:8 51:14,25 57:25 58:1,3 74:16,18,20 74:21,22 76:1,24
**APA-based** 74:25 75:3
**APA-esque** 76:7
**APA's** 51:24
**apart** 71:19
**apologize** 63:17
**appeal** 27:20 30:13
**Appeals** 27:19
**APPEARANCES** 2:1
**appearing** 4:9,19
**appendix** 13:22,24 14:23,24 15:12,25
**applicable** 67:11
**application** 65:10 83:19
**applied** 67:15
**appropriate** 67:21
**appropriately** 37:5
**appropriations** 25:10 51:4 69:9
**approval** 35:1,2
**approve** 35:6
**approved** 83:12
**arbitrarily** 33:6 57:7 82:11
**arbitrary** 26:5,6 28:8 31:10 44:2 51:9 57:22,24 58:6 58:8,12,20 59:11 61:6 82:15 83:4
**area** 17:13 30:7
**aren't** 33:18 37:24 41:3
**argue** 6:24 10:5

20:20 24:25 27:2,4 27:6 28:17 67:17 69:25
**argued** 72:7
**argues** 26:21,24 28:14 36:6
**arguing** 27:1 36:11 46:4 71:15
**argument** 1:20 3:3 7:8,11,12,18 8:2 14:3 21:15 32:12 36:18 37:3,9 44:25 54:1 56:7,8 58:2 63:2 64:13,14 65:4 68:16 69:15,21 73:5 74:16 77:5
**arguments** 7:10 11:16 19:2,4 31:23 31:25 32:16 41:19 42:9 44:9 63:10,20 67:25 70:1 75:3 76:3,25 79:9
**arrangement** 11:1
**articulate** 46:11 52:3
**articulation** 76:12
**aside** 36:24
**asked** 31:1 38:22 39:21 47:22 58:10 88:22
**asking** 7:14 37:2
**asks** 36:25
**assessment** 82:18
**assistance** 18:18
**associated** 7:25 11:5 65:8 86:8
**assuming** 81:20
**assumption** 54:24
**attempting** 19:4
**August** 1:18
**authority** 28:9 43:25 56:22 66:25 67:20 70:6
**authorization** 15:23
**authorize** 15:21 16:22 51:20 81:15
**authorized** 19:11,16 27:24 45:20 50:4 51:8,22
**authorizing** 51:14
**available** 9:25 24:14 64:22
**Ave** 2:7
**Avenue** 61:3
**award** 6:2 11:10 12:3,4,8,17,20 13:4 14:19 15:11 15:11,12 16:3,7,9 16:13,14,18,19 18:9,14 19:11,12 20:4,22 21:24 22:15 23:16 24:6 24:20 25:18 26:23 27:8 37:14 41:8 45:15,18 46:7 47:24 48:3,8 49:9 50:3,12,17 52:20 52:23 54:2,3,11,13 54:25 55:3 57:13 57:19 58:22 59:14 71:4 72:8,19,19 74:21 78:25 79:2,7 81:9,12,17,24 82:16 83:15
**award-specific** 14:12
**awarded** 50:19 53:17,20 62:11,14 68:24
**awardees** 63:6 83:11
**awarding** 13:5
**awards** 6:22 13:17 17:12 25:6 26:7 50:19 62:2,11 68:1 68:3,9 69:8 76:17 81:15,21
**aware** 28:21 30:25 31:13 76:17 81:13
**axioms** 75:17

**B**

**back** 6:20 13:9 17:22 20:19 23:13 24:15 36:14 38:3 58:3 64:24 85:13
**back-** 85:12
**background** 29:1 70:23
**bad** 6:17 29:11,17 29:22 30:8 37:10 37:12,13,14 39:1 39:22 40:3 41:6 60:17 62:5 66:13 75:20 77:4,8,13 78:2,12 83:8,22,25
**banc** 50:25 51:1
**bargain** 19:7
**bargained** 22:14
**base** 34:14
**based** 13:5 18:16 34:6 39:16 43:10 46:7 49:4 53:2 54:18 63:18 65:9 81:15 83:10
**basically** 60:3
**basis** 7:1,16 10:10 26:13 30:11 34:21 46:19 49:16 57:19 58:15 81:25
**bat** 44:7
**batch** 59:2
**Beautiful** 68:25
**behalf** 2:2,13 4:9,10 4:16 41:15
**believe** 4:18 13:1 14:7,23 17:22 19:3 24:12 25:21 30:1 34:1 39:4 48:1 74:16 77:7,22,24 88:9
**belonged** 83:11
**belongs** 40:20
**Ben** 2:18
**best** 6:7 32:19 40:21 41:1 56:19
**better** 89:7
**beyond** 15:24 18:25 76:19 82:21
**bid** 29:5,6,8
**big** 43:11 68:25
**bigger** 59:2
**biggest** 86:16
**bill** 68:25 69:3
**bind** 74:2
**binding** 41:22
**bit** 11:13,16 17:5 25:7,11 27:1 31:2 33:20 38:4 69:21 73:13,24 86:23
**blanket** 55:3
**blue** 38:15
**boilerplate** 82:21
**bottom** 19:5
**bound** 64:7
**Box** 2:17
**boxes** 58:13
**branch** 47:4
**breach** 5:2,5 6:15 8:25 9:3,6 18:1,4 20:9 22:8,17 24:5 25:21,25 26:2 28:15,17 32:11,20 32:23 33:5,9,13,19 34:8 35:9 36:4,12 36:13,17,19 37:1,4 42:5,11,14,17 43:20 46:3,10,20 48:10 49:22,23 52:19 56:18 60:5,6 66:14 68:5 69:14 75:20 76:3 79:14 80:10,13,23,24 82:1,6,7,8
**breached** 20:10 26:10,21 44:5 46:5 80:8 81:1
**breaches** 20:15 61:10 69:16
**breaks** 71:18
**BRIAN** 2:5
**brief** 10:12 12:23 14:9 23:1 24:13 30:1 31:5 33:12 38:21 41:25 44:7 44:10,17 46:23 49:13 52:9,24 55:15 56:13 61:3 64:13,19 65:11 67:7 69:21 71:14 72:3,15 74:17 78:3
**briefed** 64:11 66:1
**briefing** 84:21
**briefly** 41:16 78:23
**bring** 21:11
**brings** 26:18
**broad** 20:5 30:15
**broader** 59:23
**Brothers** 29:13
**brought** 18:2 76:6,6 77:1,5
**budget** 7:2,6,20,25 11:2,6 12:3,18,21 15:5,16,21,24 16:4 16:8,23 17:12,17 17:17 34:15 64:14 65:5,7,9,21 79:2
**building** 1:15 55:7
**bunch** 18:22 73:17
**burden** 84:4
**business** 6:12
**buying** 25:8

**C**

**C** 4:1
**calculations** 79:17
**call** 23:20
**called** 4:3 50:25 61:2 79:23
**can't** 23:22,23 24:4 34:7,10,11 38:18 39:17 41:8 42:2,3 47:4,7 48:7,9 50:7 52:2 54:16 56:16 58:5 61:25 63:3
**capricious** 28:8 31:10 51:10 57:22 57:25 58:6,9,12 61:7
**capriciously** 33:6 57:7 82:12
**capriciousness** 59:4
**carbon** 83:12
**career** 48:21
**carried** 51:23

**carry** 16:19 47:24 50:13 59:14 83:23
**carrying** 62:16
**cart** 42:3
**case** 1:5 4:8 6:23 9:20 10:8 11:8 17:20 29:3,4,14 30:4,25 31:21 35:21 36:10 38:5 40:5 42:22,23 43:3 44:11 48:2 50:23 50:24 52:25 53:2 55:6 56:18,22 58:2 58:4 60:11 61:3,8 61:9,23 62:24 63:1 64:12,21 65:3,13 65:16 66:9,11 67:7 67:8,11,11,15 68:5 68:17 70:2 75:12 75:14,16,21 76:7 77:5,6,8 78:2,19 79:23 80:2,6 86:5 86:17,24 87:25 88:2,17
**case-by-case** 58:15
**cases** 17:19 38:15,19 59:21 64:18,20 65:16 75:24 77:14
**category** 77:20
**causation** 46:4,15 70:14
**cause** 23:14 34:21 46:5
**caveat** 45:20
**cement** 20:24 34:18 55:7
**CERT** 1:25 90:11
**certain** 15:11 47:14 61:25 78:4
**certainly** 38:25 42:8 57:16 71:1 73:10 76:10 85:17
**CERTIFICATE** 90:1
**certified** 63:8
**certify** 90:4
**cetera** 15:16 16:24
**CFR** 18:5 20:6
**challenge** 5:15 79:11
**challenged** 41:8
**challenges** 32:19
**challenging** 33:9 79:16
**change** 10:23 16:10 16:13 18:8,10,11 19:15 22:16 25:14 25:15,16 70:7 72:12
**changed** 81:22
**changes** 16:2,13 18:16 19:19 21:15 71:21 74:10
**changing** 73:11,14
**charged** 40:6 78:11
**Chief** 56:21,24 57:23 60:12
**choose** 12:3,20 14:2 15:10
**chooses** 25:16
**chose** 10:10
**Christian** 19:23
**Circuit** 17:20 28:18 28:23,24 29:3,4,21 32:2 33:12 35:20 36:1,10 41:22 50:25 59:24 60:25 64:23 67:8,14 79:23,25 80:1,3
**circumstance** 13:3,8 65:19 78:1
**circumstances** 17:15 36:5 79:18
**circumvent** 19:5
**citation** 24:13
**citations** 37:23 72:14
**cite** 12:23 52:8 56:23,24 62:24 67:7 79:23
**cited** 17:19 42:22 61:3,9
**cites** 37:21
**citing** 13:25 29:13 46:2
**City** 38:1,4 80:2
**Civil** 2:16
**claim** 8:12 18:2 26:9 29:17,25 30:3,8 32:20 33:10,14 37:1,4 56:1 58:3 60:6,23 61:2 74:13 75:1,4,4,5,20,23 79:10 80:22,24 82:5,8 83:1,22 84:3
**claiming** 62:8
**claims** 1:1 4:5 5:7 6:16,16 17:19 29:3 29:10,16 36:14,14 59:25 77:2 80:7
**clarity** 28:24 88:24
**class** 40:9 63:8 77:18,19
**classes** 66:5
**classic** 65:25
**clause** 5:12 19:21,22 36:12 81:14,20 82:4,22 83:2
**clauses** 19:25
**clean** 18:14 47:10,14 68:1
**cleanly** 29:6
**clear** 28:1,13 30:5 31:20 59:18 64:12 67:14
**clearly** 10:1 20:2 35:20
**Clerk** 4:4,8 17:3 89:10
**client** 49:15
**Climate** 50:25
**close** 23:8 43:6 45:18 54:21 58:24
**closest** 63:12
**closing** 15:17
**clumsily** 11:17
**coal** 73:17
**cognizably** 10:8
**colleague** 48:6 63:24 66:11 67:24 76:4 77:16,23 84:14
**College** 80:2
**come** 9:16 37:13 58:10
**comes** 42:6 54:22
**coming** 39:9
**comment** 78:7
**commentary** 78:8 78:11,12
**commenters** 23:12
**comments** 83:16
**communication** 76:19
**companies** 40:22 41:4 62:15
**company** 10:4,7 48:5 63:3 79:24
**comparable** 65:13
**compare** 14:22 62:7
**comparison** 11:21 12:22 14:17,23
**compelling** 9:8 65:14
**complaint** 5:1,14 19:3 25:13 26:18 26:24 37:15 38:22 38:24 40:11,16 41:25 42:16 43:20 46:22 48:3 50:15 55:1 59:4 69:12 80:17,19 83:5,9
**complaints** 6:19 30:17 37:22 77:11
**completion** 12:13
**complicated** 25:11 69:9
**concede** 9:9
**conceding** 22:11
**conceivably** 7:25
**concept** 30:16 75:6
**concepts** 69:24
**concerning** 82:19
**conclude** 9:6 72:1
**concluded** 89:12
**conclusion** 33:5 36:6 40:15 65:1
**concrete** 48:4,5 49:8 49:9
**condensed** 9:22
**condensing** 88:7
**conditions** 13:21 14:13,14 19:10 20:4 78:25 81:3
**conduct** 82:17
**conferred** 84:20
**confident** 49:1
**conflict-avoidant** 84:12
**confused** 20:13
**confusing** 50:22 51:7,11
**Congress** 47:1,4,9 47:11 69:7
**congressional** 59:15
**connection** 62:13
**consider** 21:2 37:2 39:25 45:10 81:6
**considerable** 38:7
**consideration** 26:14 26:23,25 38:20 54:13 55:2 57:13 86:9
**considered** 45:8,13 81:4
**considering** 13:3 36:21 38:14
**consistent** 5:21 6:1,2 6:2 9:11,12 17:22 24:6,7,23 25:1 48:8,14,23 66:23 71:25 72:21 73:6 76:5
**consistently** 33:13
**construction** 34:17
**construe** 40:25
**construed** 10:19 66:2
**consumption** 20:21 20:23 21:20 27:1 70:25
**contact** 59:7
**contained** 6:20 38:24
**contains** 75:16

**contemplates** 81:20
**contending** 78:24
**contention** 23:16
**contest** 11:25 42:18
**context** 17:11 24:2 24:22 25:4,21 56:21 58:7 59:19 59:22 65:15 74:12 76:9 77:25 78:9 86:2
**continuation** 79:1
**continue** 12:7 13:17 23:16 71:4
**continued** 6:2 48:3
**continues** 81:10
**contract** 5:2,9 6:15 6:21 7:2,3,19,23 7:24 8:22 9:10 10:24 11:24 12:1 13:5 18:2,4 19:6,7 20:9,10,15 22:14 22:18 24:5 25:21 25:25 26:2 27:16 27:17 28:15,18 30:10 31:15 32:6 32:20 33:10,19 34:7,8 35:14,15 36:4,7,14,16,16 37:1,2,4,10 42:14 42:24,24 43:1,2,21 43:24 44:1,5 46:17 48:12 56:18 57:4 57:14 59:19 60:2,6 60:6 61:10 68:5,8 68:18 69:14 72:8 72:19 76:3 80:23 80:24 81:1 82:1,6 82:11,23
**contracting** 9:12 12:25 13:11 17:14 29:12 31:1 74:9
**contractor** 13:8,10 17:14 63:3
**contractors** 40:4 54:19 63:1 76:16 77:25
**contracts** 18:23 19:22 54:18 67:1 72:11
**contractual** 5:4,6 18:6 26:11 27:10 30:18 35:3,4,21 44:19 65:21
**contractually** 45:17 47:17
**contradicting** 22:24
**contrary** 81:8 82:12
**control** 53:21,21
**controlling** 19:5
**controls** 43:3
**convenience** 15:19 17:16 19:21 21:21 23:4 24:23 25:2 29:19 36:11 42:23 42:25 43:7,14 59:20 67:10,13 71:21 76:9
**convenient** 7:11 71:23
**cooperative** 5:3,18 13:21 25:5 33:3 34:15 40:5 68:23 72:24 74:2
**copied** 19:14 29:22
**copies** 14:13,16
**copy** 21:10
**CORINNE** 2:15
**Corp** 29:9
**corporation** 6:12
**correct** 68:17 82:2 90:4
**correctly** 68:21,22 75:1
**cost** 86:13
**costs** 11:11 17:16 73:21 74:5 86:7,14
**counsel** 43:5 46:3 56:4,14 67:16 85:24 86:21 87:17 88:5,14 89:2
**counsel's** 44:24
**count** 20:9 28:15,17 29:16 37:8 39:22 43:19,19,22,23,23 44:3,4,11 46:22 49:16,21 52:19 54:4,5,10,10 55:8 55:22 56:2 57:9,10 57:11 58:9 60:17 60:17 61:12 69:23 75:1,2,3 80:23 82:7,25 83:8
**country** 8:17 38:8 50:23
**counts** 26:4 39:1 42:16 49:20,23 60:8,9,13 66:8 69:13,13 80:16
**couple** 23:2 40:12 62:19
**course** 25:15 26:13 36:1,8 39:22 43:1 44:9 77:6
**court** 1:1 4:4,7,13 4:16,21,24,25 5:8 5:11,24 6:14,23 7:4,13,21,22 8:3,6 8:11,14,16,22,24 9:5 10:9,12,16 11:3,12,14,19 12:9 13:20,24 14:6,10 14:15,19,21 15:8 15:13 17:1,6,8,25 18:3,10,18,22 20:8 21:1,6,9,13 22:2,5 22:8,17 23:15,22 24:4,17,21 25:19 25:25 26:4,15 27:18,23 28:2,12 28:13,19 29:3,10 30:7,21 31:2,6,16 31:18,19 32:14 33:17,22,24 34:2,4 34:10 36:19,22,25 37:2,7,21,23 38:18 38:22 39:2,10,14 39:17,19,21,25 40:18,22 41:10,13 41:14,18 42:2,7,12 42:14,19 43:16 44:12,15,21 45:1,5 46:10 48:6,7,17,25 49:3,6,10,13,15,16 49:20,22,24 50:9 51:1,13,18,20,25 52:9,17,24 54:8 55:10,16,20,24 56:2,6,10 59:24 60:7,18,20 61:8 62:7 63:14,23,25 64:4,9,10,18,21 65:6,24 67:5,9,16 68:4,6,11 69:15 70:10,21 71:5,10 71:17 72:16,25 73:3,8 74:24 75:13 77:7,11 78:13,16 78:20 80:7,10 81:13 82:5 83:21 84:16,18,25 85:8 85:15 86:19 87:8 87:13,14,15,18,21 88:10,19,25 89:3,6 89:10
**court-approved** 90:3
**Court's** 24:12 26:13 42:3 67:22 79:8
**Courtroom** 1:14
**courts** 1:15 8:17 60:12,14 75:7
**covenant** 57:16 82:7 82:9
**crazy** 84:11
**create** 73:13
**created** 19:23
**creates** 12:1 73:24
**criteria** 7:5 12:4,19 13:6 28:5 79:5,7
**crystallization** 56:20
**current** 15:24 47:25 73:16
**cut** 65:8 68:25
**cuts** 73:23
**cutting** 66:5

**D**

**D** 1:22 3:1 4:1,6
**D.C** 1:17 50:25
**damage** 11:21 79:12
**damages** 7:1,15,18 7:25 8:4,12,18 9:25 10:2,11 11:5 11:5,16 17:12,24 41:16 42:2,5 46:6 63:22,23 64:22 65:2,8,16,19 66:3 66:5 74:7 78:23 79:3,16,21 80:6,7 80:12,14 86:13,13 86:25 88:3
**damages-based** 8:2
**Dan** 4:10
**dan@jacobsonla...** 2:11
**Daniel** 2:3 41:14
**Danziger** 63:1 77:5 77:6,12,17
**DATE** 90:10
**day** 83:13 89:5,7
**days** 85:3,7 86:21
**DC** 2:9,19
**DDC** 38:1
**dealing** 32:12,23 33:6,14 35:10 36:13,18,20 56:12 56:21 57:16 60:13 75:21 76:2 82:8,9
**dealt** 8:20
**debated** 52:8
**decades** 58:4
**decide** 7:6 23:23 64:11 80:4 86:17
**decided** 10:13 50:25
**decides** 57:14 80:8
**decision** 12:17 15:20 16:11,22 27:21 32:3 37:25 38:1 40:6 41:23,24 42:1 56:22 62:25 65:14 71:7 76:23 77:10 81:14 82:2,21 83:9
**decision-makers** 61:18

**decision-making** 27:15 76:12,13 83:14
**decisions** 29:23 37:21,23,24 76:20
**declared** 9:23
**deemed** 5:21
**Defendant** 1:8 2:13
**defense** 27:8 79:19
**deference** 48:18
**defined** 7:3 34:5 61:19
**definitionally** 58:20
**delayed** 35:12,13
**delaying** 35:1,1
**delegated** 66:24
**demonstration** 47:15
**denied** 63:7,7 80:15 80:17 84:5
**deny** 49:15 55:10 78:21 83:7
**Department** 2:16 37:24,25 50:17 80:25 82:15
**depending** 44:4
**derivations** 76:7
**describe** 60:12,14
**described** 53:11 56:15
**describes** 58:4
**design** 34:16
**designs** 35:2,7,12
**desire** 72:12
**desired** 27:7 74:10
**despite** 35:23 73:21
**destroyed** 33:2
**destructive** 7:17
**detail** 71:15 77:10
**determinate** 48:13
**determination** 54:25 58:22 66:15 81:9
**determine** 6:23 13:17 16:3 31:9 67:20 80:11,21 83:3
**determined** 66:25 71:3
**determines** 7:23 23:21 72:17
**determining** 6:7 67:19 87:25
**development** 18:15 69:24 73:17
**Developments** 68:1
**didn't** 17:8 21:7,9 29:24 56:6 58:22 68:13 69:16 81:5
**difference** 41:6 43:22 60:7
**differences** 9:13
**different** 21:5 37:23 38:18 40:7 43:4,8 43:16,17 44:4 45:8 45:19 51:9 52:4 57:25 60:17 67:15 70:1
**differentiable** 64:20
**differentiate** 30:8
**differentiating** 67:17
**differently** 25:7
**dig** 17:4
**dire** 9:23
**direct** 32:6 37:1 76:23
**directly** 19:14 31:12 36:14,15 77:13
**disagree** 8:16 40:3 42:8 59:17
**disagreement** 41:7 87:20
**disagreements** 82:3
**disagrees** 24:18 57:13 70:24
**disappeared** 67:5,6
**disavowed** 11:2
**disclosures** 86:9,23 87:3,24 88:6,14
**discovery** 9:24 10:3 10:6,17,21 11:7 46:9 48:20 61:13 66:12,17,19 86:3 86:14,16 88:16
**discrete** 61:18
**discretion** 6:6 14:2 14:25 15:4,10 16:1 16:14,21 23:23 24:1,18,19 26:5,9 26:16,17,20,22 28:7,11,12,14,16 28:18,20,22 29:5,7 29:11,15,22,25 30:3,7,16 31:9 36:13 51:10 56:1 57:1,4,6 58:5 59:16,23 60:1,2,4 60:5,14,24 61:5,6 61:11 68:9,12,13 69:14 74:13 75:1,6 75:8,13,17,19 82:11,16,25 83:2,3 83:4
**discretionary** 7:7
**discuss** 85:24 86:2
**discussed** 32:3 33:12
**discusses** 14:9
**discussing** 76:1 88:16
**discussion** 63:18
**disfavored** 79:17
**dismiss** 4:12,25 5:15 8:9,11,12 18:3 22:10 27:11 37:9 41:19,20,24 44:23 44:23 46:23 49:16 55:11 63:8 65:15 66:8 69:10,16,22 70:1 77:3 78:22 79:10 80:13,16 83:7 84:5
**dismissal** 36:3 70:5
**dismissal/** 65:24
**dismissed** 6:24 26:9 37:5,11
**dismissing** 8:18
**dispute** 11:4,7 21:16 21:17 31:17 44:8 46:1 47:6 50:2 62:5 66:7
**disputed** 45:12
**disputing** 22:12 44:13
**distinct** 15:22 16:24
**District** 52:9,24 71:17 73:12
**dive** 25:13 32:22
**diving** 26:8 30:6
**Division** 2:16
**Dobyns** 33:11
**doctrine** 19:23,24
**documents** 85:19
**DOE** 5:21 6:21 14:1 15:10,15 16:6,12 16:14,17 18:5,7,8 18:12,15 19:18 20:10,21 21:2,3,19 21:22 23:21 25:14 25:15,16 26:10,22 27:4,7 28:6,14 30:11,19 33:2 36:8 37:13 40:3 45:16 47:13 52:19 66:21 66:25 69:5 70:6 71:2 78:10 83:2,14
**DOE's** 6:8 12:17,19 16:2 18:11 19:7 21:18 26:24 27:19 38:13 66:15,16 74:21 81:8
**doesn't** 8:7 14:3 22:2 36:6 42:17 45:19,21,22 48:13 53:23 54:25 55:14 57:14 59:6 75:18 75:23 81:14
**doing** 7:16 55:6 57:20 84:11
**dollars** 74:6
**don't** 5:15 6:4 8:25 10:16 12:5 15:1,7 18:24 21:9,14 22:22 23:19,25 24:13 25:12 30:2 30:18 31:3,6 32:8 39:10 45:11 46:1 47:1,4,16,23 49:24 50:14,23 53:25 60:22 61:13,21 62:4 64:5,5 68:11 68:13,22 70:15,22 70:23 78:18 79:21 79:22 81:18,21 82:23 84:11 85:8 85:16,17 88:11,15
**draw** 75:2
**drawings** 34:22,25 35:12
**drawn** 84:2
**drove** 84:11
**due** 18:6,6
**duplicative** 34:10 37:4
**duties** 6:16 75:20 83:24
**duty** 32:12,23 33:5 33:14 34:5 35:10 36:4,7,12,18,20 56:8,12,17,20 57:2 60:13 76:2

E

**E** 3:1 4:1,1
**early** 8:23 10:11,20 85:23 87:17 88:4 89:1
**easier** 14:17
**easiest** 36:17
**easily** 66:1
**economic** 79:13
**effected** 24:15
**effectively** 47:8
**effectuate** 6:8,9 12:3 23:9,17 50:18,19 81:11,21,24
**effectuated** 21:18
**effectuates** 19:12 45:21 46:24 48:16 52:21 53:6 54:12 54:14,23 73:4,6 81:9
**effectuating** 5:6
**eight** 15:6 19:4

**either** 21:12 40:8 67:22
**Elaine** 1:22 4:5
**election** 62:12,14 83:13
**electrical** 21:20 26:25 70:9
**electricity** 20:21,23 21:18 45:10 70:25
**electronic** 90:5
**elements** 70:4
**Elon** 63:5 77:24
**email** 48:25
**emails** 48:21
**embraces** 29:6
**emerging** 16:16
**emissions** 45:9,10 81:5,6 83:12
**emphasize** 17:11 42:21 65:23
**emphasized** 23:2 62:14
**employed** 83:15
**employee** 66:21
**employees** 66:13,15
**employment** 78:1 83:18
**en** 50:25 51:1 68:2
**encourage** 75:13 77:11
**ended** 18:18
**ends** 19:8
**energy** 18:15,19 25:14,16,17,18 37:25 38:1 47:10 47:14 50:12,17 62:17 68:1 80:25 81:6 82:15
**energy-saving** 78:4
**energy-specific** 6:8
**engage** 15:1 82:18
**enter** 9:24 74:1
**entered** 30:19 54:17
**entering** 34:17 57:18 72:23
**entire** 41:17 72:21
**entirely** 28:1,13 30:5 31:20
**entirety** 6:24
**entitle** 65:1
**entitled** 8:3 9:17 17:16 40:3 65:4,5 65:6 76:18
**entitlement** 15:23 16:24 17:17 79:1
**entity** 19:10 20:2
**enumerate** 75:18
**enumerated** 16:4 75:21
**environmentally** 20:24
**EPA** 51:1
**equitable** 64:23
**erroneous** 71:13
**error** 21:22 41:25 70:5
**escalate** 38:17
**especially** 9:21 39:20 69:10 86:2 86:24 88:2
**ESQ** 2:3,4,5,14,15
**essay** 76:14
**essence** 49:15
**essentially** 6:11 7:1 18:12 20:19 23:9 26:19 33:2,4 34:16 36:10 38:21 65:3 69:23 72:6,17 74:2
**establish** 42:5 77:1
**et** 15:16 16:24
**evaluation** 10:7 12:19 13:12,13,18
**everybody** 4:7
**exact** 25:3 63:2
**exactly** 22:7 43:17 48:19 55:21
**example** 34:13,19 73:14
**examples** 61:22
**exceptions** 80:5
**exchange** 88:5
**excuse** 12:24 28:12 28:14
**executive** 47:3
**exercise** 13:2,4,14 57:5,5 58:4 60:1 61:5,6
**exercised** 28:6 31:9 44:1 82:11 83:4
**exercising** 43:25 82:16
**exist** 75:24
**existed** 81:12
**expect** 59:13
**expectation** 6:25 7:20 11:16,21 17:11 65:9 74:7
**expectations** 8:1 33:3 35:15 36:4 54:18 57:8,17 82:13
**expecting** 69:6
**expedite** 9:21 85:2 85:20 87:6
**expenditure** 6:10
**expenses** 11:9
**expert** 10:6,6
**explain** 78:23
**explains** 56:24 57:24
**explanation** 27:5 82:20
**explicit** 32:4
**explicitly** 31:24 35:17 45:13 74:19
**express** 34:11 37:2 40:13,16 43:20,24 44:5 57:11 72:12
**expressly** 23:12 36:21
**extended** 79:8
**extent** 19:11,16 22:11 31:22,25 45:20 50:4 51:8 74:15 75:10 77:15 85:20
**eyes** 54:21 58:24

**F**

**F** 2:3
**F.2d** 29:4,10,14
**F.3d** 17:21 32:2 79:24 80:3
**faces** 83:21
**facilitate** 66:17 69:5
**facilitating** 69:7
**facility** 34:18 45:9 81:5
**fact** 7:23 10:20 12:12 13:7,9,17 16:1,12 19:22,25 23:16 25:17 26:25 27:13 34:23 40:15 41:22 46:5 55:5 70:18 74:17
**facts** 10:23 11:4 24:5 36:2 37:15,16 60:15 65:1 67:17 83:14 84:1
**factual** 38:18 46:9 48:2 80:19,21
**factually** 20:11 68:20 70:23 81:4
**failed** 37:11
**failing** 54:2
**fails** 32:17 45:15
**failure** 82:17,18,20
**fair** 11:16 28:7 32:12,23 33:5,14 35:10 36:13,18,20 56:12,21 57:16 60:13 75:21 76:2 82:8,9
**fairly** 32:4,16 35:20 37:20 64:20 87:4
**faith** 6:17 16:7 24:15 29:11,17,22 30:8 32:12,23 33:5 33:14 35:10 36:12 36:18,20 37:10,12 37:13,14 39:1,22 39:23 40:3 41:6 56:8,12,20 57:16 60:13,18 62:5 66:14,14 75:20,21 76:2 77:4,8,13 78:2,12 82:8,9 83:8,22,24,25
**fall** 79:22
**false** 20:11 45:12 81:4
**far** 9:14 13:1,1,12 15:19 18:25 23:2,5 24:1 35:5 42:22,22 42:24 50:24 61:21 75:24
**FAR-** 13:4
**FAR-based** 13:11 17:13
**fashion** 25:11 83:4
**fault** 83:19
**favor** 8:20 52:10 80:20 84:3
**Fed** 80:3
**federal** 1:1 4:5 5:2 9:12 12:25 17:19 17:20 19:9,11 20:1 20:4 23:10 25:5,6 28:18,23,24 29:3,4 29:21 31:1 32:2 33:12 35:19 36:1 36:10 38:9,10 41:22 59:24,25 60:25 64:23 67:7 67:14 72:14 74:9 80:1,7
**fights** 10:3
**file** 84:22 85:3 87:5
**filing** 64:15 87:11,14
**filings** 4:22
**final** 54:6,9,10
**finally** 31:22 77:4 83:8
**financial** 9:23
**find** 5:25 8:25 9:3 31:3 36:19 48:25 65:6 77:12
**finding** 8:19
**finds** 65:24 82:5
**fine** 85:21
**finish** 60:24
**first** 4:18 7:11,12 11:25 14:8 20:11 26:20 42:4 44:17 44:18 45:8 53:10

55:13 58:18
**fits** 8:7
**flatly** 22:24
**floated** 69:1
**flowing** 19:24
**focus** 49:8
**focusing** 44:3 69:11
**follow** 21:9
**following** 15:6 63:20 68:24 88:2,6
**footnote** 14:8 17:9
**footnotes** 14:8 17:6
**foregoing** 90:4
**forest** 71:22
**Forget** 28:20
**forgot** 73:3
**form** 7:2 23:6,7 41:23 64:15 66:6 68:15 74:7
**formed** 40:7
**former** 74:3
**forms** 80:5,6
**forth** 5:14 9:14 33:25 35:3,5,9,13 35:17,22,25 48:9 71:14 75:22 79:5 85:14
**forward** 9:20 21:3 44:11,11 54:5 78:10
**found** 61:9
**four** 60:8,17,17 61:12 80:17 83:8
**frame** 87:6
**Franklin** 2:18
**friendly** 20:24
**front** 4:19 62:24 75:15
**frozen-in-** 72:7
**full** 9:24 72:1
**fully** 66:1
**function** 60:10
**fund** 6:10 15:11,11 15:12,21 16:12,22 78:10
**funding** 13:8 15:15 15:23 16:25 67:25 68:25 69:5,7
**funds** 48:4
**further** 63:13
**future** 7:20 9:6 11:2 12:3,15,18,20 13:6 15:5 16:3,25 17:12 17:17,17 65:5,7,21 68:9

**G**

**G** 4:1
**gather** 24:5
**general** 21:17 31:15 71:16 72:11 77:15
**generalities** 75:17
**generalized** 77:18
**generally** 8:19 25:5 25:6 31:1 66:17 71:22 74:8 79:10 79:22
**generation** 45:10 81:6
**getting** 10:8 53:12 82:3
**give** 48:18 56:23
**given** 50:18 78:20
**gives** 76:22
**giving** 12:12 56:2
**go** 7:6,9,12 11:17 13:16 15:8 23:13 23:25 24:14 26:1 30:21 36:14 42:10 42:12 44:14 49:24 52:15 54:5,5,8 56:11 60:23 61:21 68:6 77:9
**go/no-go** 12:9,10,11 12:16 78:25 79:6
**goal** 66:22 72:22
**goals** 5:25 6:5 19:12 21:18 23:17 24:8 45:15,22,23 46:24 46:25,25 47:1,18 47:25 48:15 50:3,7 52:21,22 53:18,25 54:2,14,23 58:23 66:25 74:4 81:10 81:11,16,22,25
**goes** 6:20 13:6 43:15 87:25
**going** 9:20 10:5 17:22 21:3 29:24 32:1 43:19 44:11 44:11 50:23 52:15 55:21 58:25 71:1 73:19 78:10,21 79:8 86:14 87:10 87:21
**good** 4:15 16:7 24:15 32:12,23 33:5,14 35:10 36:12,18,20 39:23 41:12,13 56:8,12 56:20 57:16 60:13 63:14 65:14 66:14 75:20 76:2 82:8,9 83:24
**governing** 78:25
**government** 4:11,14 9:10 11:2 12:2,7 13:5,9,14,16 19:22 23:6 24:16 25:1,8 35:6,11,12,13 39:23 41:20 42:17 43:5 44:13,24 45:12 46:3,16,21 46:22 47:6 54:1,20 55:14,23 56:3,14 58:1,17,21 59:13 59:23,25 60:3 61:4 61:10 62:20,21 63:1,9 78:24 79:3 80:8 83:23 85:10 86:7,8
**Government's** 4:12 13:3 24:18 44:7 49:12 53:1 56:13 61:5,17 67:18 72:11 76:20,23 78:22 80:16 84:4
**grant** 38:14 53:19 53:24 59:21 70:7 72:12
**granted** 81:18
**grantees** 40:4 76:16 76:18
**grants** 5:17,17 25:5 68:10,20,23 70:19 70:19 72:23 73:17 73:19,20 74:1
**greatest** 19:16
**greatly** 79:3
**green** 18:12,15,19 25:14,15,16,18 39:2,3,6,25 40:23 41:2 55:6 62:16,16 78:5 83:17
**ground** 6:13 22:18 22:19,21,22 45:17 46:8,12,21 47:22 51:6 58:18
**grounds** 20:12,13,14 20:18,20 21:4 22:3 22:12 23:9,11,13 29:12 44:18,20 45:8 46:2,12,16 47:17 49:11,17,22 50:4 70:11,12,17 81:1
**group** 2:6 37:18 40:19,25 61:9,19 61:20 62:3,3,10,23 63:4,4,6 77:18 78:7 83:10
**Grumman** 32:2
**guaranteed** 13:19
**guess** 7:18 9:7 24:6 28:2 48:9 67:9,13 84:7
**guidance** 9:13 20:7
**Gulf** 61:9 65:10

**H**

**half** 66:4 73:15
**Handi-Craft** 79:24
**haphazard** 59:11
**happen** 87:11,16
**happening** 38:11
**happy** 7:9,10 25:23 42:10 49:17 55:19 56:4,23 63:19 84:23 85:6 86:21 87:3,5 88:13
**hard** 8:19 34:4
**harm** 40:13,16,19 40:25 41:1
**harmless** 21:22 70:5
**hate** 61:15,24 63:4
**hated** 63:3,6
**haven't** 59:21 84:20 87:13
**he's** 39:12
**head** 29:24 52:2 86:22
**hear** 4:13
**heard** 30:14 47:8 58:16 76:3
**hearing** 4:11 27:19 39:5 89:12
**heightened** 30:12 76:19
**held** 33:13 51:2 62:2 80:1 81:14
**help** 14:3
**helpful** 45:2 57:23 85:19 86:11 87:24
**Hi-Shear** 17:20
**high** 53:20
**highlight** 43:8
**highly** 60:16
**history** 28:23 53:3 53:10 61:22
**hold** 80:10
**holding** 81:19
**hone** 30:16
**honed** 22:9
**hones** 24:10
**Honor** 4:15 5:10 7:10 9:9 11:18 12:22 14:4 15:7 17:23 18:3 20:16 22:10 27:25 29:1 30:24 32:13 33:21 34:14 37:8 38:4 39:13 41:11,12,15 41:16 42:10,13 43:8,11,18 44:17 45:3 46:14 47:22

48:20 49:13 50:10 50:14 52:5,11,12 52:24 54:3,7 55:9 55:19 56:13,24 57:13 59:20 60:22 62:25 63:13,16 64:5 70:16 74:14 78:15 84:14 85:5 85:16 87:23 88:24
**Honorable** 1:22 4:5 89:10
**hope** 11:9 48:25
**hopefully** 75:11
**hopes** 53:20
**hoping** 11:12
**horse** 42:4
**Housing** 56:22
**Howard** 1:15
**hurdle** 83:22

**I**

**i.e** 31:14
**I'd** 4:17 9:8 19:20 58:10 72:2
**I'll** 4:13 19:9 20:17 41:15 42:15 43:21 44:14 45:21 52:5 52:11 56:11 57:2 60:10,15 65:23
**I'm** 7:9,10,13 13:24 13:25 17:8 21:6,11 25:22 28:21 30:3 30:24 31:13 37:22 42:10 49:17 54:6 54:20 55:18,21 56:4,23 63:19 71:7 78:21 80:21 84:12 85:11 86:20 87:3,5 87:8
**I've** 4:17 14:13,19 25:22 28:25 34:2
**idea** 5:8 75:12
**ideas** 6:8,10
**identified** 64:12,19 64:21 65:11 66:11 69:17 77:17,23 81:17
**identifies** 30:1 37:15 82:14
**identify** 22:18 30:18 32:18 33:15,18 36:6 40:16 66:15 77:6 87:1
**identifying** 67:8
**illegitimate** 22:5
**illogical** 49:5
**imagine** 11:17 17:3 48:19 53:19 88:1
**immaterial** 79:20
**immediately** 56:25
**impact** 16:18 38:9 38:16
**impacted** 38:9
**impacts** 12:19
**impeded** 35:11
**impertinent** 79:20
**implicated** 6:17
**implied** 6:16 31:24 35:21 36:4,7,7 56:12,17,20 57:2 57:15 60:13 75:20 76:2 82:7,9
**important** 11:20 19:21,23,24 44:6 45:19,22 53:9 87:7
**importantly** 62:15
**impose** 28:3
**improper** 41:21
**inaccurate** 27:1
**inappropriate** 11:24 36:3
**inbox** 59:9
**incentivizes** 73:25
**include** 31:13 72:21
**included** 81:2 82:17
**includes** 79:19
**including** 19:11 38:23 41:23 45:19 81:3
**inconsistent** 57:7 66:16 72:10 74:9
**incorporate** 27:13 29:5,8 31:7,12 74:20
**incorporated** 5:3 27:22 30:10,25 31:16 32:5 36:16 36:23 45:25
**incorporates** 51:8
**incorporating** 31:23 74:15
**incorporation** 31:5 76:24
**incur** 74:5
**incurred** 11:10
**incurring** 73:21
**independently** 46:6 46:19
**indicia** 57:22 58:21
**individual** 27:3 66:13,14,21 69:13 69:13 70:4,24,25 71:19 77:20
**individualized** 26:23,25 30:13 54:13 55:2 57:12 63:10 70:9 71:3 82:17
**individually** 40:8 77:25
**individuals** 41:4 66:24
**indulge** 80:20
**industrial** 47:15
**Industries** 29:2
**Indyke** 65:14
**ineffective** 53:18
**infects** 76:25
**infer** 38:19 39:17,19
**inference** 37:13 39:21,22
**inferences** 80:20 84:2
**inflated** 79:4
**Inflation** 47:12 50:11 51:3 55:4
**inform** 12:17
**information** 12:6 32:1 49:5 68:2
**inherently** 60:23 62:17 76:22
**initial** 11:5 68:24 86:9,23 87:3,23 88:5,13
**initiating** 5:16
**injure** 40:10
**injury** 79:13
**innate** 76:20
**insider** 49:4
**instances** 8:16
**instrument** 64:7
**insufficient** 79:19
**intended** 53:15,16
**intending** 40:9
**intent** 38:19 40:13 40:16,19,25 41:1,2
**interest** 25:2 49:14
**interests** 23:6 67:18 73:1,4,7
**interpret** 54:17
**interpretation** 8:22 71:20,24 72:5,5 74:11 82:4
**interpreted** 47:19
**inundated** 10:2
**involve** 38:8
**involved** 20:22 64:21,25 85:20
**involves** 12:16
**isn't** 10:23 22:19 60:21
**issue** 8:21,23 9:1,7 9:18 38:4,12 40:14 41:16,17 58:11 63:22 84:21
**issued** 52:23 53:10 54:3 55:4 62:25
**issues** 10:8 43:9 66:3 69:11 70:5
**it's** 4:14,18 7:4,7 9:12 10:7 13:1 15:4 17:14 19:16 19:23 20:12,13 21:13,13 22:11,12 22:17,24 23:20,23 24:7,11,22,23 27:13,25 28:5,10 28:13,20,24 32:3 32:16,23 33:9,22 34:1,5 35:24 38:17 38:25 39:3,10 40:22 41:4,18,21 43:16,17 44:20 45:2,18,18 46:10 46:15 48:2,15,17 50:22 51:5,10,11 51:15,15,16 54:15 57:10 59:18 60:23 61:2 63:10,25 64:1 64:6,12 65:20 66:7 66:23 67:8,12,14 69:25 71:13,23,23 71:23 73:23 74:8,8 75:3,4 76:5 77:7 77:17 78:8,11 84:9 88:22 89:5

**J**

**J** 1:25 90:3,10,11
**Jackson** 61:3 75:12
**Jacobson** 2:3,6 3:5 4:10 41:12,14,15 42:8,13,15,20 43:17 44:14,16,22 45:2,6 46:14 48:11 48:19 49:1,4,7,11 49:21,23 50:1,10 51:17,19,21 52:5 52:18 54:9 55:13 55:17,21,25 56:3,9 56:11 60:9,22 62:10 63:15 70:13 78:19 84:14
**January** 38:2 83:13
**Jersey** 52:25 71:6 72:4,6,16 81:13 82:1
**JOHN** 2:4
**joint** 84:7 85:3,9 86:10 87:11 88:12 88:20
**joking** 17:8
**JPSR** 88:7
**JSR** 86:1 87:4,5
**Juan** 41:23 64:19,20

80:2
**Judge** 1:22 56:21,24 57:24 62:25 63:4,7 77:8,9
**Judge's** 60:12
**judges** 61:8
**judgment** 10:13,19 10:21,22 42:1 65:25 66:2,5
**judicially** 62:19
**jump** 7:10 32:11 63:19 77:4
**jumped** 11:15
**juncture** 83:25
**junior** 59:8
**jurisdiction** 31:15 31:16
**Justice** 2:16
**justification** 83:19

**K**

**Kalvar** 29:9
**Kaplan** 1:22 4:6
**Keco** 29:2
**keep** 52:2 88:11
**kicking** 52:15
**kind** 11:17 32:7 34:12 39:24 41:6 53:12 56:19 59:4 60:11 66:6 70:14 76:25
**knew** 70:11
**know** 5:12 6:4 12:5 15:1 18:24 19:17 21:14,16,17 22:22 23:25 24:15,23 26:16 31:13 32:6 32:24 33:25 34:22 35:5 38:10 39:15 40:22 43:1,5,10,21 45:18,25 46:15,18 47:9,10 48:21 49:7 49:14 50:2 51:1 52:7,12,15 53:6,8 53:16,19,22 54:9 54:16,19 55:5,18 56:13,14,25 57:9,9 57:11,21 58:3,10 58:14,19,23,24 59:1,12,21 60:15 61:1,4,8,13,21,23 62:1,18,21 63:2,9 68:6,9,19,22 69:2 69:6,22 70:10,16 70:22,23 74:7,18 76:14 81:19 82:23 84:9,22 85:18
**knowing** 61:19 86:15
**knowledge** 19:1 38:25
**knows** 59:20

**L**

**laid** 20:18 25:10 29:25 32:3
**language** 6:20,21 7:23 13:12,13,18 14:5,25 15:2,4,9 15:18,20 16:1,11 16:22 19:5,14,16 19:18 23:5,8 25:2 27:24 29:22 32:6 35:23 36:23,24,25 40:6 54:11 56:25 71:24 73:3,22 75:8 75:9 82:22
**large** 38:10
**largely** 85:19
**late** 34:22,25
**law** 17:13 19:12,17 27:24 30:4 31:21 35:21 42:22 43:4 45:20 47:11,12 50:5,7 51:8,16,22 52:8 58:4,11 60:11 64:12 65:13,17,20 65:22 67:11,15
**lawfully** 83:24
**laws** 50:9
**lawyer** 84:10
**Lawyers** 2:6
**leads** 39:24
**legal** 8:21,23 28:22 32:25 33:4 36:6 47:7 64:7
**legitimate** 46:12 70:12
**lens** 68:7
**let's** 26:4 34:14 42:12 45:6 73:15 88:19,20
**letter** 20:18 21:10 27:6 44:19 45:4 58:17,18 59:6
**level** 71:16 76:19
**levels** 15:16
**Lewis** 2:14 3:4 4:11 4:15,16,22,25 5:10 5:13 6:4,15 7:8,17 7:22 8:5,9,13,15 9:2,8 10:15,18 11:13,15,20 12:10 13:23 14:4,7,12,16 14:20,22 15:9,14 17:2,7,10 18:1,11 18:20,24 20:16 21:2,8,11,14 22:4 22:7,9,20 23:19,25 24:9,25 25:20 26:2 26:8 27:25 28:10 28:21 30:22 31:11 31:19 32:15 33:20 33:23,25 34:3,9,11 37:8 39:3,13,15,18 39:20 40:21,24 41:11 42:21 59:17 63:16 64:3,5,10 67:6 68:15 69:18 70:15,22 71:6,12 73:2,5,9 78:14 85:11,16 86:20 87:13,16,20,22 88:24 89:1,5
**liability** 42:5
**likes** 47:10
**liking** 27:3
**limit** 11:6
**limited** 37:20 79:18
**limits** 57:3
**line** 29:11,13 35:19 64:12 69:18 73:1 75:2
**listed** 44:18 46:8,16
**listen** 84:9
**lists** 58:19
**litigation** 38:7
**little** 14:17 17:5 25:7 25:11 31:2 33:20 38:3 51:13 69:8,21 69:24 73:13,24 86:23 88:22
**long** 32:24 52:3 58:3 79:6,12
**long-term** 74:1
**longer** 16:14 19:12 24:23 45:21 46:24 48:16 52:21 53:6 53:14,24 54:11,22 71:4 73:3,4,4,6 81:9
**look** 11:21 15:25 16:4 20:1 22:23 23:4,10 24:14 28:16 31:2 35:24 36:17 38:18 45:7 53:3 75:2 86:15,16
**looking** 13:15,24 14:23 19:3 20:5 25:4 37:22 57:20 84:21
**looks** 67:2 86:4,18
**loss** 10:4
**lost** 67:3
**lot** 25:20 33:22 54:10 65:13 68:2 69:23 85:13 88:1
**lots** 53:19 61:22

**M**

**Madison** 1:16
**main** 25:22
**maintain** 33:13
**making** 7:19 31:25
**mandatory** 51:4
**manner** 6:7 31:17 36:25 57:3,7 58:6
**manufacturing** 20:24 34:18
**Markey** 1:15
**mass** 50:16 55:3
**Massachusetts** 52:24 71:17 73:12
**masse** 68:2
**massive** 73:21
**matter** 9:20 21:22 22:2,4 24:7,10 43:2 44:10 65:17 65:20,22 66:21 72:9 79:21 90:6
**matters** 24:12
**Matthew** 2:14 4:11 4:16
**matthew.lewis@u...** 2:21
**mean** 5:25 9:9 10:3 10:16 14:2,10 19:3 19:20 22:24 23:22 24:2 25:4 30:23 39:4 47:7,19 49:20 60:23 64:1,3,7,20 69:23 70:18,23 71:12,16 73:9,14 85:18 86:20
**meaning** 10:24 58:7 60:18 71:21
**meaningfully** 19:18 21:14
**means** 23:18 43:2 46:25 52:14,22 53:16 54:4,12,20 56:17,21
**meant** 38:9 47:2 53:13 59:14
**measure** 11:23 28:6
**mechanism** 68:18
**meet** 4:19 12:6,15 45:15 53:14 54:2 58:22 61:16 76:16 86:21
**meeting** 53:18 78:9 85:23 87:17 88:4 88:19 89:2
**meets** 23:24
**members** 61:24 62:3

83:10
**mentioned** 55:14
**merely** 6:19 24:16 32:19 36:5 37:3 69:11
**merit** 79:22
**met** 79:7 83:3 84:4 84:20
**metaphysical** 52:7
**middle** 73:10
**mild** 19:15
**milestones** 15:16
**million** 59:14
**millions** 74:6,6
**Mint** 36:10 37:5
**minute** 30:20
**misconstrues** 69:20
**misses** 71:22
**Mm-hmm** 21:1
**model** 28:24
**modifications** 16:8
**modify** 16:17
**moment** 42:15 82:23
**money** 6:10,12 9:17 9:19 12:7,12 47:14 50:13 76:21,22
**monies** 12:15
**months** 69:2 88:17
**motion** 4:14 5:15 8:7,9,10,11 9:21 10:19 22:10 27:11 37:19 41:19,24 47:23 49:16 50:2 55:11 63:8 66:2 69:10,20 77:3 78:22 79:9,15 80:13,16 83:7 84:4 85:2
**motion-to-dismiss** 63:23 83:6
**motions** 4:12 79:17
**motive** 57:6
**mouth** 61:15
**move** 6:25 10:20 18:1 20:9 26:4 30:22,23 37:9 44:23 46:22 69:16 69:22 84:12,24 87:4
**moved** 44:23
**moving** 52:14 66:7 88:12
**muddled** 60:11
**murky** 30:6
**Musk** 63:5 77:24

**N**

**N** 3:1 4:1
**N.W** 1:16
**National** 1:15
**nature** 26:6 49:2
**necessarily** 8:20 9:5 22:11 25:7 35:22 39:13 64:11,16 65:8 73:18
**necessary** 16:8
**need** 9:4 23:25 29:18 32:5 56:15 61:16 69:22 80:11 84:22
**needed** 35:16 51:7
**needs** 47:13 50:12 72:18
**negotiate** 16:6
**negotiation** 16:13
**never** 39:7,8
**new** 23:10 24:8,8 37:16 38:23 39:2,3 39:6 40:1,23 41:2 50:19 54:15 62:16 68:23 69:6 71:6 72:4,6,16 73:18,19 74:5 78:5 81:13,15 81:22 82:1 83:17
**newly** 16:6
**news** 43:11
**nice** 4:19
**night** 28:23
**Ninth** 79:23,25
**NIOSI** 2:15
**Nolan** 29:13
**non-bid-** 31:14
**nonaward** 15:5
**noncontractually** 46:2
**normal** 13:2
**Northrop** 32:2
**notably** 9:14 38:8
**note** 4:17 19:20 30:24 31:22 44:6 45:11 59:3 72:2
**noted** 11:22 52:23
**notes** 63:18
**notice** 17:4 21:21 83:15
**noticeable** 62:20
**November** 38:13
**nuance** 33:21
**nuanced** 21:16
**number** 4:8 13:6 15:6 19:2 29:23 31:23 63:17 65:16 82:14 86:1
**numbers** 75:11
**NW** 2:7

**O**

**O** 4:1
**objective** 11:23 12:4 12:19 53:15,16 79:6,7
**obligate** 13:14
**obligation** 11:2 12:2 26:11 35:16 36:7
**obligations** 30:12,19 35:11
**obtain** 10:1,6
**obvious** 39:11 66:8
**obviously** 41:21 49:14 53:15 56:16 59:20 61:17
**occasion** 80:11
**occurred** 5:19
**OCED** 68:1,10,23 68:25 70:18,19
**October** 38:5,6,13
**offers** 65:14
**office** 4:18 18:14 39:8 68:1
**officers** 48:21
**Offices** 27:19
**official** 24:16 61:24 62:21 90:5
**officials** 39:23 83:23
**oh** 4:21 14:6 22:2 49:24 54:22 56:9 56:10
**okay** 4:13,24 6:14 11:14,19 14:20 17:1 21:13 25:19 31:18 37:7 42:7,19 45:1,5 49:3,6,10 52:17 55:10,24 56:10 63:14 71:5 73:8 78:13,20 84:16,25 85:10 88:19 89:6,8
**old** 54:15
**OMB** 23:10,12 43:9 53:10 71:7 72:6,16 74:10 81:13
**OMB's** 72:4
**once** 7:22 17:4 30:15 32:24 69:21 78:6 87:3
**opening** 12:23 24:13 25:22 44:7,10,17 46:23 49:13 55:15 64:13
**opinion** 24:7,10,11 24:12 57:23 60:12
**opinions** 52:9
**opportunity** 27:7,20 30:14 71:8 83:16
**opposing** 24:17 67:16
**option** 7:2,5,7 12:24 13:4,6,13 15:20 42:9 64:14 65:4
**option(s** 13:15
**options** 13:2,4,12,13 13:18
**oral** 1:20 56:7
**order** 4:3 10:6 11:8 12:7,14 55:10,22 56:4,5 70:1
**orders** 10:3
**original** 81:12
**outside** 70:17
**overcome** 83:23
**overlap** 60:16
**overlaps** 58:9
**override** 34:11
**overthrow** 29:12,18
**overturned** 24:16

**P**

**P** 4:1
**p.m** 1:19 4:3 89:12
**P.O** 2:17
**page** 3:3 74:18
**pages** 32:24
**painful** 84:9
**papers** 30:22 56:23
**paragraph** 15:6,18 16:6 26:21 27:6 37:22
**paragraphs** 15:15 26:19 33:1
**parallels** 76:11
**parenthetical** 24:9
**part** 18:14 20:17 37:18 40:9 48:2 50:16 59:1 62:15 78:7
**partial** 66:2
**participate** 12:8
**particular** 6:6,13 9:15,19 18:21 39:5 48:8 55:4 58:22 77:9,14 80:4,6 86:5,12,13
**particularly** 19:21 64:17 85:19 87:24
**parties** 10:2,20 11:7 32:10 57:8 67:12 76:22 82:3 84:21 86:15
**partly** 60:10
**partners** 40:4 76:16
**party** 24:17 33:14 57:4,5,18 77:20 82:10 85:19 86:6,7
**party's** 82:12

**pass** 81:19
**pass-** 19:9
**passed** 47:5,11
**passing** 69:3
**passthrough** 20:2
**path** 55:18,20
**Paul** 38:1,5
**payment** 11:9
**pays** 9:10
**peel** 38:3
**people** 61:19
**perfect** 14:20
**performance** 11:23 36:8
**performed** 29:19 41:5
**performing** 40:2 41:4
**period** 5:21 11:6 12:3 15:21,24 16:8 16:23 34:14,15 64:14 79:2 87:2
**periods** 7:2,20 8:1 11:3 12:18,21 15:5 15:16 16:4 17:12 17:17,18 65:5,7,9 65:21
**permissible** 46:2 47:17
**permits** 6:21
**permitted** 45:17
**person** 4:20 59:13 61:20 71:25
**personal** 12:13 18:25
**perspective** 18:3,12 78:4
**Pine** 33:11,23 34:1
**place** 1:16 6:6 51:25 67:12
**plain** 53:2
**plaintiff** 1:5 2:2 4:10 65:2 77:19 79:12 80:4,12
**plaintiff's** 69:15 79:12
**plaintiffs** 77:14,16 82:5
**planning** 34:16
**plant** 81:7
**platitudes** 75:16
**plausible** 80:22
**plausibly** 5:1 26:10 37:11 55:1 84:3
**play** 42:6
**plead** 44:3
**pleading** 8:23 62:22 64:25 79:19
**pleadings** 32:22,25
**please** 4:16 41:14
**pled** 30:17 57:10 69:12 75:5,8 77:2
**PLLC** 2:6
**plugged** 50:14
**point** 4:23 9:9 11:21 14:18 26:15 27:16 29:21 31:4 32:21 39:24 43:6 53:7 56:15 61:14 63:11 64:10,18 66:19 68:4,20,21,22 70:3 71:16 75:25 79:9 85:25
**pointed** 23:3 62:18 63:5 74:14
**pointing** 74:24
**points** 11:17 16:5 21:5 23:2,3 25:22 26:24 27:18 32:6,8 39:4,5 58:3 59:7
**policies** 18:7,12,13 18:19 48:9
**policy** 18:15 21:18 25:15,16,17 66:16 74:3 78:11,11
**policy-based** 74:11
**political** 40:6
**Portland** 36:9 37:5
**position** 12:20 71:12 88:12
**positive** 56:7
**possibly** 23:8 25:3
**Post-it** 67:3
**potential** 38:14 77:8
**potentially** 29:12 86:3
**power** 45:10 81:6
**practical** 9:19 10:7 74:11
**practice** 88:22
**practices** 72:11
**preamble** 53:11
**precedent** 37:6 41:23 59:17,18 61:11 65:10,10 67:19
**Precision** 33:11,23 34:1
**preclude** 6:25
**precludes** 7:19
**preclusion** 11:24
**preemptively** 42:2
**prefer** 85:15
**preliminary** 84:7 85:3,9 86:10 87:11 88:20
**premature** 41:17 80:3
**prepared** 84:15
**prerequisite** 87:7
**present** 27:8
**presented** 79:18
**President** 47:12
**presiding** 4:6
**press** 62:12
**presumably** 55:12
**presumed** 39:23
**presumption** 83:23
**pretextual** 83:18
**pretty** 17:14 39:11 64:12 67:14 74:19 87:19
**prevail** 83:22
**primarily** 37:21
**prior** 62:11 69:2
**priorities** 5:22,24 6:9 18:7,8 19:13 21:3,23 22:16 23:7 23:18 24:8 25:1 27:14 29:20 43:10 45:16 46:24,25 47:1,2,19 48:1,8 48:15 50:4,8 52:22 52:22 53:5,18,25 54:2,14,15,16,23 58:23 66:23 67:18 70:7 72:9,17,18 81:10,11,16
**priority** 18:16 72:4 72:20,22
**pro** 4:22
**probably** 10:5 65:18 86:1,16
**problem** 24:10 27:9 34:13 65:24 85:16 85:17
**procedurally** 41:21
**Procedure** 28:4
**proceedings** 4:3 62:21 90:6
**process** 12:11,16 16:16 26:6 27:15 30:13 35:1,2 58:14 59:5,12,13 83:14
**processes** 13:16 76:13
**procurement** 59:19
**production** 48:4 49:8,9
**products** 25:9
**program** 5:17,18,25 6:4,5 18:6 19:12 23:17,17 45:22 46:24 47:18,25 48:15 52:21,22 53:4,25 54:14,23 72:22 81:10,16,22
**programs** 5:21 18:17 66:16 69:6 78:5
**project** 12:14 20:22 45:11 47:24 53:14 53:17 57:20 66:22 82:18
**projects** 6:11 39:11 40:23 47:11,15 50:13 62:17 83:11
**promise** 32:18 33:15 33:18 34:6,12 35:21,25 56:16
**prong** 29:7 34:20 72:21
**proper** 57:6 79:11 79:16
**properly** 26:22 29:19 41:18
**property** 72:13
**proposal** 43:12 45:12
**propose** 88:4
**proposed** 43:12,13 43:14 85:4,4
**proposition** 17:21 20:11 47:7
**protective** 10:3
**protest** 29:6 31:15
**protests** 29:6,8
**prototypical** 66:6
**prove** 75:22 83:25
**provide** 13:7 26:22 27:4,7 30:12,13,14 54:12 57:12 82:20 88:13
**provided** 28:25 72:14
**providing** 6:11 31:4
**provision** 20:20 33:8 36:15,21,22 42:25 43:15 47:7 47:13 50:11,21 51:3 53:1,10,12 54:4 55:4 71:20 76:8
**provisions** 6:22 20:3 26:12 32:7 42:23 43:24
**pull** 45:3 75:15
**pulled** 69:7
**pulls** 71:19
**punitive** 65:16 80:6
**pure** 30:8
**purely** 7:7 8:21,23 10:24 71:21,23
**purpose** 6:13 67:9 72:9

**purposes** 5:14 25:10 69:10
**pursuant** 5:2 16:12 18:20 19:10 21:23
**pursue** 41:2
**pursuing** 68:9
**put** 42:3 51:21 58:24 67:3
**puts** 73:16

**Q**

**quality** 20:25
**qualms** 70:4
**quantify** 86:25
**question** 8:24 46:4,9 46:15 48:17 52:7 63:25 64:1 69:4
**questioned** 74:14
**questions** 17:23 25:23 42:10 52:12 55:9 63:13 78:15
**quickly** 49:18,19 87:4 88:15
**quite** 7:9 11:13 17:22 25:20 48:1 59:18
**quote** 80:9,9
**quoted** 75:10
**quotes** 45:7

**R**

**R** 4:1
**race** 61:25
**racial** 62:3
**raise** 55:14
**raised** 44:9 63:9,20 78:3
**range** 10:23
**rationale** 27:5
**reach** 9:7
**read** 15:3,14 17:8 19:9,25 27:16 29:10 32:1 47:19 50:6 57:3 63:18 71:8,10,17 73:11 74:9 75:13 77:6,11
**readily** 24:13 61:12
**reading** 71:25
**reads** 17:6
**ready** 88:14
**real** 29:1,15 46:1 69:4
**really** 7:13 20:20 22:19 24:10 26:5 29:25 31:19 32:9 39:15 46:4 48:7 51:15,15,25 57:14 58:2 61:24 63:25 79:10 81:18 82:23
**realm** 9:25 65:2
**reason** 9:7 24:22 40:17 43:18 46:18 53:20 60:4 70:16 72:20 81:18
**reasonable** 11:9 28:7 33:3 54:18,19 57:8,17 59:13 62:4 71:25 80:20 82:12 84:2
**reasonably** 49:1 57:6
**reasoned** 27:5
**reasons** 46:11 80:13 82:2,19 83:1
**recall** 31:3 75:1
**receiving** 12:7 13:9
**rechallenging** 33:8
**recipient** 15:22 16:7 16:24
**recipients** 62:10
**recitation** 5:11 82:21
**recited** 60:25
**recognize** 80:5
**recognizes** 83:21
**recollection** 75:14
**record** 57:3
**recording** 90:5
**recover** 64:8 80:4,12
**reducing** 83:12
**reduction** 45:9 47:12 50:11 51:3 55:5 81:5
**redundant** 79:20
**refer** 39:6
**reference** 23:2 27:16 31:4 32:6,8 53:7 73:9
**referenced** 21:4 38:25 70:18
**references** 20:19
**referred** 20:6
**referring** 15:18 39:12
**refers** 39:7,8
**reflect** 59:12
**reflected** 77:22
**reframe** 69:20
**regard** 74:21 81:13
**regarding** 16:7 82:4 83:17,19 88:2
**regardless** 4:22 21:15 22:13 31:11 54:15 55:5 67:19 68:15,17 70:3,8 71:1,2 72:16 77:22
**Register** 23:10 72:14
**regular** 33:19
**regularly** 10:20
**regulation** 22:23,24 23:14 35:3 36:23 37:3 45:25 47:3,20 52:20 71:18 72:1
**regulations** 5:3 9:11 9:12 25:8 27:19,21 43:9,12
**regulatory** 43:3,4 53:3,9
**reimbursement** 9:15
**reiterating** 33:4
**reiteration** 32:25
**rejected** 23:12 53:1 63:11
**related** 38:13
**relates** 45:25 67:1
**relationship** 86:7
**relatively** 27:12 71:13
**release** 62:12
**relevant** 15:5 38:20 66:20 67:11,22 77:19 87:1
**relied** 20:10
**relief** 29:16 64:23
**religious** 62:3
**relying** 81:1
**remaining** 11:18
**removal** 15:3 16:20
**remove** 16:21
**removed** 16:1,2
**renders** 72:5
**repeatedly** 42:22
**repeats** 32:19
**rephrase** 77:2
**reply** 25:23 64:19 69:21
**report** 84:8 85:3,9 86:10 87:12 88:13 88:21
**Reported** 1:25
**request** 85:1 87:1
**requested** 85:2
**requests** 23:12 66:18 79:3
**require** 11:4
**required** 26:12 35:25 45:14 76:14 76:16 83:25
**requirement** 23:11 76:15,18 84:23 86:10
**requirements** 9:15 15:11 27:9,10 28:3 31:24 76:8
**requires** 57:17 76:12 80:18
**requiring** 57:5
**resolution** 11:8,25
**resolve** 68:8 70:2
**resolved** 10:9 69:11 88:17
**resolving** 66:6
**respects** 80:25
**respond** 83:16
**responds** 79:5
**response** 15:1 27:11 30:1 37:16 38:21 40:11 71:10 74:17 74:19 78:3
**restrict** 23:12
**restriction** 64:15
**restrictions** 51:24 52:1
**result** 14:1 15:9 18:8 73:11 79:14
**resulted** 51:4
**review** 5:17,19,20 8:22,24 12:9,10,11 12:16 14:1 15:10 26:11 34:23 35:6 36:22 48:7 51:16 58:14 68:19 78:25
**reviewed** 18:13,16 20:21 23:22
**reviewing** 52:2
**reviews** 7:22 79:6
**revise** 15:15
**right** 5:4,6 7:4,7,15 7:21 8:3,4,6,14 9:1 9:11 10:14,16 14:16 15:13 16:3 17:7 18:6,22 19:8 20:8,11 21:23 22:13 23:20 28:2,9 29:12 31:21 36:9 39:10 41:18 44:6 48:11 50:23 51:14 54:17 55:12,16 60:20 64:6 65:21 68:18 69:18,19 70:12 71:12 73:17 75:11,15 87:15,18 87:18
**ripe** 10:22
**rise** 4:4 89:10
**Robinson** 2:4 84:15 84:17,19 85:1 88:11
**root** 36:10 37:12
**ROSEN-SHAUD** 2:5
**rough** 89:5
**roughly** 5:19

**roulette** 54:21
**round** 68:24
**rubric** 79:22
**rule** 11:3 42:2,4 43:12,13 53:11
**ruled** 8:20 52:9
**rules** 51:16 53:4
**ruling** 3:7 86:3 88:3
**running** 28:22
**runs** 36:9
**rushed** 58:13 59:11

**S**

**S** 4:1
**S/Sara** 90:10
**San** 41:23 64:18,20 80:2
**Sara** 1:25 90:3,11
**saying** 28:5 31:6 40:18 44:12 46:10 48:7 53:6 54:11 68:11,12 70:13
**says** 14:1 20:10 45:23 48:12,23 50:12 52:20 57:2 60:2 61:4 83:18,20
**scam** 39:2,3,6 40:1 40:23 62:16,17 78:5,5 83:17
**scandalous** 79:20
**scenario** 67:15,23
**scenarios** 53:12,13 53:19
**schedule** 9:22 84:7 84:20 85:4,5,21 86:18 87:6,9,25 88:16
**scholars** 52:8
**school** 58:11
**scope** 11:7 18:25 66:9,10 86:3,11 88:2
**screaming** 52:16
**screams** 59:11
**se** 4:22
**SEAL** 1:11
**search** 75:19
**seated** 4:7
**second** 20:12 45:15 46:21 51:6 67:9,12
**Secretary** 5:16 38:23 39:6,7,7 50:12 66:24 78:3 83:17
**section** 39:1 43:15
**see** 6:1 15:4,9,25 16:10 29:24 30:17 37:22 45:6 75:21 81:18
**seek** 10:3
**seeking** 41:20
**seeks** 38:22
**seemingly** 58:23
**seen** 34:2 43:11 75:24
**sense** 16:15 74:12
**sent** 59:3,6,7,7 64:23
**sentence** 13:25 15:17 16:5
**separate** 15:22 16:23 28:15 29:7 29:16,25
**separating** 41:6
**serve** 85:25
**services** 25:9
**serving** 72:25
**session** 4:5
**set** 5:13 17:14 35:3,9 35:13,17,22,25 36:24 37:6 52:1 53:5 75:22 79:5 84:6 86:14,14
**sets** 9:14 33:25 35:5 35:20 64:7 71:14
**setting** 42:21 85:4 86:11
**seven** 19:4 44:4 69:25 86:21
**she's** 87:21
**shortly** 71:9
**show** 24:5 43:15 59:4 63:3 70:8 79:1
**shows** 62:22
**shutdown** 38:10,10 38:16,17 69:2
**signed** 10:25 47:12
**similar** 6:15 13:15 13:18 20:1,5 28:4 51:1,5 58:2 82:25
**similarly** 5:7 76:9
**simple** 32:17 66:3 71:13
**simply** 23:20 32:17 33:8 35:24 36:2 37:2,11 38:12,17 40:2 41:7 44:19 47:4 49:15 54:21 55:3 64:6 65:17 69:19 70:6 71:18 72:23 75:3,23 76:7 77:3 78:1,6,12
**simultaneously** 87:19
**single** 29:11,13 61:19 69:23
**situation** 9:23 38:18 65:18 73:13,25 76:11 77:17 87:23
**situations** 8:19,21 76:21
**six** 44:3
**skip** 55:21
**skis** 15:7
**slight** 87:20
**slightly** 67:15
**so-called** 12:18 83:17
**sole** 14:1,9,25 15:3 15:10 16:1,14,20
**Solomson's** 56:22
**somebody** 24:17 61:14
**somewhat** 14:24 50:22 57:10 87:6
**soon** 88:14
**sorry** 21:6,11 54:6 56:11 89:4
**sort** 15:2 28:22 29:10 30:6,15 38:19 42:20 55:17 59:10 65:2 66:9 68:6 72:7 75:5,16 75:18,18 76:1,1,11 85:21
**sorts** 62:1
**sought** 6:25 9:19,22
**sound** 90:5
**sounds** 57:25
**speak** 57:14
**specific** 6:5 8:18 16:16 17:15 18:13 18:17 19:4,18 24:20,22 25:9 26:11 27:5 30:2,4 30:12 31:4 32:7,18 33:15,18 35:3,22 35:25 40:8 47:13 50:13,18 56:15 58:7 60:18 63:2 68:5 71:24 73:21 74:25 75:9 76:12
**specifically** 17:3 20:25 22:14 26:3 26:15 30:10 36:23 37:17 50:15 61:15 69:12 78:9
**specifications** 34:22 34:25 35:2
**specifics** 18:25 21:20 71:14
**specify** 20:3
**spend** 47:14
**spending** 68:19 78:4
**spends** 76:21
**spent** 51:5
**spin** 54:21
**spotter** 58:11
**St** 38:1,5
**stage** 8:23 10:11 34:16 35:9 42:21 62:22 63:24 83:6,6
**stand** 85:11
**standard** 13:20 14:11 24:24 27:15 28:9 57:1 61:1,1,7 61:16,17 72:3,4,5 75:9,13,19 80:18
**standards** 20:6 27:14 29:5,8 30:2 30:4 31:8,13,17 32:4,5,25 35:6 36:1 51:9 52:2 58:1 67:9,13 74:20 75:22 76:1,7,19
**standing** 17:21
**star** 45:7
**started** 29:4 63:21 69:1
**starting** 29:1 32:21
**starts** 19:7
**state** 74:18,19 80:22 84:3
**stated** 80:24 82:5,10 83:1
**statements** 62:19,20 63:5
**states** 1:1,7 4:4,9,17 5:4 12:11 22:14,15 22:20 29:2,9 33:2 34:19,23,24,25 35:24 36:2 38:16 40:14 80:2
**Station** 2:18
**status** 38:16 84:8 85:3,9 86:10 87:11 88:20
**statute** 50:18,20 51:2 59:15
**statutory** 50:20 67:25
**step** 10:7
**stepped** 76:4
**stepping** 31:20
**stone** 17:14
**stopped** 72:25
**straight** 42:11 43:19
**straightforward** 27:12 32:16 55:18
**strange** 73:13,24
**strike** 7:15 8:7,10 65:15,25 78:23 79:15 80:14
**striking** 8:18
**strong** 48:2

**stronger** 15:19
**strongly** 59:16
**structure** 12:25 13:15 72:13 74:10
**structured** 25:6
**struggle** 63:17
**stumbles** 59:8
**subcommittee** 39:5 78:9
**subject** 38:7
**Sublime** 1:4 4:8 5:1 7:1,24 9:17,21,25 11:1 12:6,12,14,14 14:24 16:15 18:2 19:2 20:9 21:25 22:20 26:10,18,19 26:20,24 27:7,12 27:18 28:14 29:18 30:1,14,17 31:1,3 31:22 32:17,19 33:2,6,7 34:16,20 34:21,24 35:8,23 35:24 36:2,5,10,19 36:25 37:11,15,17 37:18,21 38:20,21 39:7,21 40:1,2,8,9 40:10,12,13,14,17 40:19,24 41:15 45:8 48:4 58:16 59:7,8 61:15 65:4 65:5,6 68:22 70:8 70:24 72:7 73:12 74:15 77:21 78:2,7 78:7 79:1,5,14 80:20,23 81:4,8,24 82:14,19 83:11,16 83:18,21,24 84:3 86:12
**Sublime's** 4:25 5:7 6:16,25 7:20 16:18 18:4 19:6 21:17 23:15,20 24:11 27:20 33:3 35:11 35:14 37:3,9,12,14 37:20 39:8 46:5 47:24 54:1 55:6 62:13 66:16,22 71:17 79:3 80:19 82:18
**submission** 50:5 57:15
**submit** 35:11 49:13 62:22 85:6,8 88:7
**submits** 86:7
**submitting** 34:21,24
**subsequently** 5:22 30:9
**substance** 64:16,17
**substantial** 12:13 74:5
**substantially** 11:6 21:19 30:23 77:13
**substantiate** 25:13
**substantive** 16:10 51:15
**substantively** 15:1 36:24
**subtheory** 52:15
**succeed** 75:23
**suffered** 79:13
**sufficient** 64:25 83:5 84:1
**suggest** 86:20
**suggested** 10:12
**suggesting** 86:19 87:9
**suggests** 53:5
**Suite** 2:8
**summary** 10:13,19 10:20,22 42:1 65:25 66:2,5
**superficial** 15:3
**support** 65:1
**supported** 6:18
**supporting** 83:14
**sure** 7:13 13:7 30:3 32:14 44:22 71:7 85:11
**surplusage** 72:6
**surprise** 27:12
**survive** 32:17 77:3
**survives** 75:4
**syntax** 71:18
**system** 43:3
**systems** 1:4 4:9 41:15 43:4 61:15

**T**

**T** 1:15
**take** 30:15 55:20 86:23
**talk** 30:2 43:21 49:18 51:14 57:22 85:12 88:1
**talked** 67:24 84:22
**talking** 15:17 23:5,6 26:16,20 27:23 65:3 66:10 85:13
**talks** 15:15
**Tapp** 62:25 63:4,7 77:9
**target** 75:9
**targeted** 62:9 77:14 78:6
**targeting** 38:15 40:8
**targets** 75:4,5
**taxpayer** 6:10 12:12
**technology** 16:17 53:22
**tell** 50:14
**term** 19:16 50:3
**term-** 21:10
**terminate** 5:4 6:22 12:2 18:6 21:24 22:15 24:20 25:17 26:7 28:7 43:10 49:9 52:20 53:23 57:19 59:1,14 60:3 70:6 73:20 82:16 83:9
**terminated** 5:9,23 9:10 18:9,22 27:8 33:7 34:19 37:10 37:14 46:7,19 50:3 50:16 62:2 68:3,4 68:10,21 70:11,17 70:20,21 71:2 82:24 83:15 86:6
**terminating** 45:17 72:11
**termination** 5:12 6:18,20 9:18 11:10 12:24 15:19 17:15 18:20 19:8,20 20:3 20:5,14,17 21:4,10 21:21 22:3,13,18 22:19,21,22 23:3,4 23:7,11,11,13,14 24:15 25:2 26:11 27:2,6,14,21 28:16 29:19,20 33:8 34:21 36:11,15,21 36:22 37:12 38:6 38:12,14 41:8 42:23,25 43:7,14 44:19,20 45:4 46:3 46:11,13,17 47:17 50:6,16 51:22,23 55:3 58:12,17,18 59:6,19,21 62:5,13 67:10,13,21,25 68:24 72:3,4,10,13 76:8,9,15,17 81:2 81:14,20,21,25 82:4,19,20,22 83:2 86:8
**terminations** 38:4,5 38:7,8,15 51:2 61:9 81:15
**terminology** 12:5 23:5 25:4 32:4
**terms** 10:1,24 13:20 14:12,14 18:4 19:10 20:4 23:14 30:10 43:20,22 44:5,22 57:12 58:8 59:17 63:22 74:22 78:24 81:2 83:3 86:11
**terrible** 62:1
**test** 6:1
**testify** 48:22
**tether** 74:22
**tethered** 35:17
**text** 53:2,9
**thank** 4:21 41:10,11 42:13 63:15,16 79:9 89:8
**that's** 7:7,11 12:25 15:2,18 17:13 18:25 20:20 22:9 22:22 25:21 28:8 29:2,9,14 31:20 32:2 34:12 35:2,13 35:19,22 37:3 38:23 40:2 41:5 47:2,8,15 48:11 52:6 53:2 55:17,22 58:19 60:20 61:2,7 61:23 63:14 64:6 65:2,18 67:10 69:18 70:13 73:2 74:9 78:1,6 80:9 85:21 87:22 88:9 88:21 89:6
**theories** 6:19 7:15 7:18 42:17 44:4,9 44:15,16 52:13 55:8,12,12 78:23 79:12,16,21 80:14
**theory** 8:12 44:18 44:24 52:10,18 54:5,10
**there'd** 43:18 69:4 72:20
**there's** 9:7 10:17 17:20 19:4 22:3,6 24:4 27:16 29:14 33:20 35:4 36:2 40:19 42:4 50:24 57:21 58:21 61:11 61:23 62:18 64:1 67:7 76:15 86:1 87:7
**they'll** 84:22 88:16
**they're** 11:12 25:6,9 27:1 28:5 31:6,7 31:12,25 40:18 62:1,20 68:11,12 81:17 85:18,20 88:14
**they've** 43:13 86:25
**thing** 43:8 44:6 52:11 57:23 70:14 76:10 84:6 86:17

87:10,16
**things** 10:4 51:7 52:5,6 55:7 62:2 63:17 77:24 84:12 84:24 85:24 86:2 87:19 88:1,12
**think** 6:6 7:14 9:2,8 10:2,9,12,18,21 11:20 13:21 14:24 15:2 17:4 22:20,23 23:1,19 24:9 25:12 27:25 29:17 30:6 30:15 31:6,7,11,19 32:15,16 33:20 34:12 35:8,19 39:10 40:11,13,18 40:21,24 41:5,17 43:5 44:6 45:11 46:1,3 47:8 48:6 50:14 51:21 52:6 53:25 55:17 56:3 56:12,14,19 57:11 58:1 60:22 61:22 61:25,25 62:4,15 62:19 64:3,6,17,22 65:13,17 66:1 67:14,19 68:11,12 68:15,18 69:4,9,19 70:13,16 71:13 72:12 73:2,5,24 74:8,14 76:5,25 77:19 85:24 86:1,9 86:13 87:7,23 88:12,15,15,18
**third** 45:18,24 46:7 46:12 47:22 52:11 76:22
**thought** 54:19 60:24 66:13,21 78:21 84:8,12
**thoughts** 84:19
**three** 20:18 26:19 37:23 43:23 44:8 44:16,18 45:7 49:11 52:6 55:13 55:22 58:9 60:8,10 60:14 66:4 73:15 82:25
**thresholds** 12:15
**threw** 69:23
**throws** 19:2 21:25 37:16
**thumbtack** 58:25
**tick** 58:13
**tie** 86:12
**tie-in** 74:22
**TigerSwan** 61:8
**time** 4:19 8:19 29:3 29:23 34:4 38:11 49:14 52:23 53:7 54:3 66:8 72:8,8,9 72:18,20 81:12 86:24 87:2,6
**timeline** 88:8
**titles** 40:24
**today** 9:5 47:8 78:21 85:5 89:2,3
**Tomorrow** 89:6
**top** 29:23 53:8
**topic** 25:18 63:19 65:25
**totally** 48:22
**touch** 41:16
**tough** 60:20,23 87:22
**tradeoff** 20:22
**traditional** 12:24 13:11
**transcriber** 90:1,3
**transcript** 1:11 90:4
**trees** 71:22
**trial** 64:21
**tried** 69:20
**tries** 40:25
**trigger** 85:25
**true** 22:22 39:3 58:19 80:18 83:20 84:2
**trusted** 61:25
**try** 10:10 24:14 86:22
**trying** 9:16 27:13 31:12,12 74:20 85:20 86:12 87:8
**Tucker** 29:8 31:14 31:15 68:5,17
**turns** 34:23 53:22
**two** 5:19 14:16 17:19 20:18,20 21:4 32:24 33:1 37:6,23 39:4,5 43:23 44:18 46:2 50:10 52:5,8,9 56:2 57:10 58:15 59:5,22 60:8,10 66:4 70:11 73:15 75:1,2,3 81:1 82:7 87:5 88:6,13,21 89:1,2,3
**type** 9:19 23:3 40:2 40:3,7 41:2 66:7 69:8 75:23 78:8,10
**typical** 64:17 87:1
**typically** 67:11 86:6 86:23

**U**

**U.S** 2:16
**ultimate** 11:8 20:23 34:17 40:15 41:7 66:22
**ultimately** 24:11 67:20 69:3,7
**unambiguously** 20:3
**unavailable** 65:17 65:20,22
**unconstitutional** 47:3,21
**underlying** 7:18 10:10 60:15 65:21
**undermined** 36:8
**undermines** 35:14
**underneath** 5:17,18 6:22 9:11,13 17:13 29:7 30:9 36:1 37:5 41:9
**understand** 18:24 48:22 51:11 55:16 68:13 87:8
**understanding** 5:20 19:19 34:5 50:15 76:4
**uniform** 9:13 20:7 23:11 25:8
**unilateral** 16:3
**unilaterally** 16:17
**United** 1:1,7 4:4,9 4:17 5:4 12:11 22:14,15 29:2,9 34:19,22,24,25 50:25 80:2
**unreasonable** 9:16 44:2 61:6
**update** 16:9
**upheld** 8:17,17
**USAID** 63:1,6 77:24
**use** 7:6 57:24 60:5 88:18
**useful** 88:16
**uses** 53:3,5 56:25
**usual** 88:21,22
**Usually** 87:18

**V**

**v** 29:9 71:7 72:4,6 72:16
**vaguely** 27:20
**validated** 61:1
**valuation** 10:4
**Vance** 1:25 90:3,10 90:11
**various** 70:4
**vehicle** 79:11,16
**version** 20:13
**versus** 43:22,23 64:14
**vested** 57:4
**viability** 79:11
**view** 48:14 52:25 53:1 54:4 56:19 62:11 84:3
**violated** 6:17 32:18 33:15 43:23 50:9 51:2,23 56:16 74:18
**violates** 50:6
**violation** 50:20
**virtue** 9:18
**vs** 1:6 4:9 29:2 79:24 80:2 81:13

**W**

**waive** 84:23 87:10
**waived** 44:10
**waiving** 85:18
**walk** 42:15
**wall** 58:25 69:24
**want** 14:9 15:7 17:2 17:10 21:25 26:15 31:7 42:21 48:23 50:24 61:21 63:21 66:12,19 67:2 68:20 71:6 75:25 77:4,9 85:12
**wanted** 6:1 78:17 85:5
**wants** 13:17 49:8 60:4
**Washington** 1:17 2:9,19
**wasn't** 27:2 43:18 72:20,21 75:14
**way** 14:21 16:2 28:7 28:8 31:10,20 34:5 34:13 35:13 36:17 39:15 41:1 44:1 46:5,18 50:5,7 51:21,23 56:6,14 57:14 60:1 71:21 74:1 77:1 84:9 85:21
**ways** 17:22 27:2 45:19 58:11 73:24
**we'd** 71:16 84:23
**we'll** 30:9
**we're** 6:11 7:19 13:15 14:23 17:13 20:5 22:11,12 23:5 23:6 52:15 55:18 58:25 65:3,3 66:10 75:25 76:14,15,17 85:6 87:9 88:13 89:8
**we've** 10:25 30:20

33:12 51:7 54:9
**wedded** 52:14
**Wednesday** 1:18
**week** 87:5,5 88:5,6 88:18
**weeks** 5:19 58:15 59:5 88:6,13,21 89:1,2,3
**went** 37:19 55:23 62:13 71:15 84:10
**what's** 28:4 43:22 60:7
**wheel** 54:21
**Whittlestone** 79:24
**win** 87:21
**Wisconsin** 2:7
**wished** 71:4
**wishes** 78:10
**witnesses** 87:1
**wondering** 13:25
**word** 48:12 53:4 71:19,20
**wording** 45:3
**words** 24:24 33:7 42:3 43:2,7,24 48:12 50:6 51:12 61:14
**work** 13:19 16:16 33:17 35:15 39:8 40:2,4,7 41:2,3,4,5 53:23 64:4 78:8,10 88:10
**working** 40:5
**world** 48:20
**wouldn't** 39:19 57:18 64:22 70:17
**wrap** 86:22
**Wright** 5:16 38:23 39:6,7,8 66:24
**Wright's** 78:3
**write** 76:14
**written** 6:5 25:22 66:4

**X**

**X** 3:1

**Y**

**yeah** 8:15 22:9 26:8 33:23 34:3,9 44:14 48:22 49:5 50:1,10 51:17,19 54:20 60:9 64:9 84:18 87:18 88:11,25 89:6
**year** 7:2,6 12:24 13:4 15:20 59:22 60:25 64:14 66:4
**years** 4:18 13:6 37:6 42:9 65:4 73:15,15
**you'd** 7:12 14:17
**you're** 7:14 8:6 13:25 27:23 28:2 46:10 56:2 87:9

**Z**

**0**

**1**

**1** 16:5
**10** 88:17
**103** 37:22
**12** 1:18
**12(b)(6)** 35:9 79:10 80:17,18
**12(f)** 79:15
**1200** 29:4
**1250** 29:14
**1298** 29:10
**1357-1362** 80:3
**1372** 17:21
**1399** 32:3
**14** 85:3,6
**1491(a)** 31:14
**17.206-208** 13:1
**17.207** 13:2
**1969** 29:14

**2**

**2** 18:5 20:6
**2:00** 1:19 4:3
**200** 20:6
**200.340** 20:19 22:21
**200.340-84** 41:9
**200.340(a)(4)** 18:5 19:8 21:24 33:9
**200.340(b)** 20:1
**20016** 2:9
**2004** 80:3
**20044** 2:19
**2008** 32:3
**2010** 79:25
**202** 2:20
**2020** 53:10 56:23
**2025** 61:3 68:21
**2026** 1:18 38:2,5,6 38:13
**2028** 73:18
**20th** 83:13
**26-458** 4:8
**26-458C** 1:6
**27-35** 61:2 75:11
**28** 88:9

**3**

**3** 16:5
**3:42** 89:12
**30** 74:18
**301** 2:8,10
**340(a)(1)** 34:20
**340(a)(4)** 21:4 72:3
**356** 17:20
**391** 80:2

**4**

**4** 1:14 3:4
**405** 29:14
**41** 3:5
**47** 14:24 15:25
**480** 2:17
**49-day** 88:8
**492** 29:4

**5**

**5** 13:13
**5100** 2:7
**52.217-** 13:12
**535** 32:2
**543** 29:9
**59** 46:16

**6**

**60th** 46:17
**618** 79:24
**63** 3:4

**7**

**70s** 29:2
**717** 1:16
**78** 3:7

**8**

**8/24/2026** 90:10
**823-1148** 2:10
**87** 59:14
**880-6321** 2:20

**9**

**9** 13:24 14:23 15:12 88:17
**90** 33:1
**91** 33:1
**96** 26:19,21
**97** 27:4
**970** 79:24
**973-74** 79:25
**98** 26:19 27:6